In re CSVA, INC., Tax I.D. # 56–1507814, d/b/a Hip Pocket and Hip Pocket Stores, Debtor.

Bankruptcy No. 91–31299.

United States Bankruptcy Court, W.D. North Carolina, Charlotte Division.

March 6, 1992.

Wayne Sigmon, trustee.

David Schilli, Charlotte, N.C., for Quiocassin Associates Ltd. Partnership and Salisbury Mall Ltd. Partnership.

E. Glenn Kelly, Asheville, N.C., for Asheville Mall, Inc.

Michael S. Hunter, Charlotte, N.C., for Crown American Corp.

## ORDER

MARVIN R. WOOTEN, Bankruptcy Judge.

THIS CAUSE coming on to be heard and being heard upon the Trustee's Objections to the Claims of Crown American Corporation, Asheville Mall, Inc., Quiocassin Associates Limited Partnership, and Salisbury Mall Limited Partnership, after adequate Notice and a Hearing as that term is defined in the Bankruptcy Code and the Rules of Bankruptcy Procedure.

The Trustee's Objections primarily require the court to determine whether in a bankruptcy proceeding in which CSVA, Inc. d/b/a Hip Pocket and Hip Pocket Stores (the "Debtor") is the lessee of nonresidential real property and the Trustee ultimately rejects the lease of nonresidential real property, a lessor is entitled to a post-petition administrative rent claim at the monthly rental rate provided in the lease for the time period until the court authorizes the Trustee's rejection of the lease. The Trustee does not dispute that the Landlords are entitled to a post-petition administrative rent claim, but objects only

to the extent of such an allowed claim. The relevant facts are not in dispute.

After carefully considering the applicable law and the arguments presented, the court concludes that the Landlords are entitled to a post-petition administrative rent claim in the monthly rental rate provided in their respective leases from the entry of the order for relief through the date on which the court approved the Trustee's rejection of the unexpired leases. In support of this conclusion, the court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. An involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code was filed against the debtor on June 14, 1991. The court entered an Order converting the debtor's Chapter 7 case to a case under Chapter 11 of the Bankruptcy Code and entered an order for relief on the same day. On July 26, 1991, the court entered an Order converting the debtor's Chapter 11 case back to a case under Chapter 7 of the Bankruptcy Code and the Trustee was appointed by the court on July 30, 1991.

2. Crown American Corporation, Asheville Mall, Inc., Quiocassin Associates Limited Partnership, and Salisbury Mall Limited Partnership (hereinafter collectively, the "Landlords"), are claimants holding claims for pre and post-petition rent against the debtor for shopping mall leases.

3. The debtor was in the business of retail clothing sales. During the Gap Period and the Chapter 11 Period the debtor generally remained in active retail business in its various shopping mall locations. At the beginning of the Chapter 7 period and generally by no later than July 30, 1991, the debtor had ceased doing active retail business in any of its locations. After July 30, 1991, the debtor remained in possession of its shopping mall locations for the purpose of storing remaining inventory until same could be removed.

4. On or about August 9, 1991, the Trustee filed a Motion to extend the time to assume or reject unexpired leases until September 15, 1991. This Motion was filed by the Trustee because he was unsure as to whether he would have an automatic 60–day period to assume or reject leases, as granted in § 365(d)(4), in a case converted from Chapter 11 to Chapter 7. Thereafter, the Trustee learned that pursuant to § 348(c) the 60–day period of § 365(d)(4) exists in a converted case and the Motion to extend was thus not necessary.

5. By Orders entered on September 12, 1991, the Trustee formally rejected the leases of the Landlords.

6. The Trustee received the following sums upon liquidation of the inventory remaining in the Landlord's premises after July 30, 1991:

| Landlord | Location | Amount |
|---|---|---|
| Crown American | Patrick Henry Mall | $ 796.00 |
| Crown American | New River Valley Mall | 822.00 |
| Asheville Mall, Inc. | Asheville Mall | –0– |
| Quiocassin Associates | Regency Square | 782.00 |
| Salisbury Mall | Salisbury Mall | 750.00 |

7. The Landlords filed either post-petition rent claims or Requests for Payment of Administrative Rent as follows:

| Landlord | Location | Claim Period | Amount |
|----------|----------|--------------|--------|
| Crown American | Patrick Henry Mall | Gap Period | $1,034.95 |
| Crown American | Patrick Henry Mall | Chapter 11 Period | 5,174.75 |
| Crown American | Patrick Henry Mall | Chapter 7 Period | 6,948.63 |
| Crown American | New River Valley Mall | Gap Period | 866.11 |
| Crown American | New River Valley Mall | Chapter 11 Period | 4,330.55 |
| Crown American | New River Valley Mall | Chapter 7 Period | 5,815.34 |
| Asheville Mall, Inc. | Asheville Mall | Gap Period | 1,573.77 |
| Asheville Mall, Inc. | Asheville Mall | Chapter 11 Period | 4,578.24 |
| Asheville Mall, Inc. | Asheville Mall | Chapter 7 Period | 6,877.39 |
| Quiocassin Associates | Regency Square | Gap Period | 2,159.64 |
| Quiocassin Associates | Regency Square | Chapter 11 Period | 11,261.45 |
| Quiocassin Associates | Regency Square | Chapter 7 Period | 16,156.20 |
| Salisbury Mall | Salisbury Mall | Gap Period | 377.23 |
| Salisbury Mall | Salisbury Mall | Chapter 11 Period | 1,842.65 |
| Salisbury Mall | Salisbury Mall | Chapter 7 Period | 2,845.72 |

The Landlords filed Proofs of Claim in the above-referenced bankruptcy proceeding based upon the pre-petition arrearages due from the debtor under each of their respective leases, a claim arising from the Trustee's rejection of their respective leases, and post-petition administrative rent due from the debtor and the Trustee under each of their respective leases. The Landlords have asserted in their Proofs of Claim post-petition administrative rent based on the monthly rental rate in their respective leases and have included other charges provided for in their respective leases.

8. The Trustee filed Objections to each of the Landlords' post-petition rent claims. He asserts that the Landlords should receive only the storage value of the leased premises as a post-petition administrative claim rather than the full contract rate of rent plus other charges. The Trustee also objected because the Proofs of Claim failed to classify post-petition claims into three types: one covering the time period from the filing of the involuntary petition to the entry of an order for relief, one covering the time period under which the case proceeded under Chapter 11, and one covering the time period under which the case proceeded under Chapter 7.

## CONCLUSIONS OF LAW

■ A. Because this bankruptcy case was initiated as an involuntary proceeding, a "gap period" exists. The gap period is the time period between June 14, 1991, when the involuntary petition was filed, and June 25, 1991, when the order for relief was entered.

■ B. Administrative claims in a case under Chapter 7 of the Bankruptcy Code which has been converted from another chapter have priority in distribution over the administrative claims incurred in the case under the pre-conversion chapter. 11 U.S.C. § 726(b). Similarly, administrative claims arising after the order for relief has been entered have priority over claims arising during the gap period. 11 U.S.C. § 502(f); 11 U.S.C. § 507(a)(2). Thus, in the case now before the Court, the administrative claims incurred after the conversion to Chapter 7 on July 26, 1991 (the "Chapter 7 Administrative Claims") have priority over the administrative claims incurred from June 25, 1991 to July 26, 1991 (the "Chapter 11 Administrative Claims"), which in turn have priority over claims arising during the gap period (the "Gap Period Administrative Claims").

The classification of administrative claims as Chapter 7 Administrative Claims, Chapter 11 Administrative Claims, and Gap Period Administrative Claims is significant when the assets collected by the Chapter 7 trustee are insufficient to pay all administrative expense claims in full. The court has not been called upon to make any de-

termination whether sufficient assets exist to pay all administrative expense claims and does not do so.

■ C. The court concludes that the Landlords are entitled to a post-petition administrative rent claim at the monthly rental rate provided in their respective leases and should include all of the charges provided for in their respective leases through the date on which the Court approved the Trustee's rejection of the unexpired leases. Numerous other courts have considered the same issue now presented to this Court. The clear majority of courts have held that under section 365(d)(3) of the Bankruptcy Code, the trustee timely must make all of the payments required under an unexpired lease of nonresidential real property until the lease is deemed rejected. *See, e.g. In re Laurence R. Smith, Inc.,* 127 B.R. 715, 716 (Bankr.D.Conn. 1991); *Second Penn. Real Estate Corp. v. Papercraft Corp (In re Papercraft Corp.),* 126 B.R. 926, 929–30 (Bankr.W.D.Pa.1991); *In re Wash. Bancorporation,* 125 B.R. 328, 329 (Bankr.D.D.C.1991); *In re Narragansett Clothing Co.,* 119 B.R. 388, 391 (Bankr.D.R.I.1990); *In re Cardinal Indus., Inc.,* 109 B.R. 738, 741 (Bankr.S.D.Ohio 1989); *In re W. Monetary Consultants,* 100 B.R. 545, 547–48 (Bankr.D.Colo.1989); *In re Granada, Inc.,* 88 B.R. 369, 371 (Bankr.D.Utah 1988); *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 972 (Bankr.E.D.Pa.1987); *In re Longua,* 58 B.R. 503, 505 (Bankr.W.D.Wis. 1986); *In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879, 883 (Bankr.E.D.N.Y. 1986).

Two primary reasons lead this court to conclude and support the majority rule. First, the language of section 365(d)(3) requires the trustee timely to perform all of the obligations of a debtor under an unexpired lease of nonresidential real property, including making timely payments required under the lease. *See* 11 U.S.C. § 365(d)(3). And, secondly, the legislative history of the enactment of section 365(d)(3) illustrates Congress' intent to provide the lessor of nonresidential real property with such treatment. *See* 130 Cong.Rec. at 8894–95

(daily ed. June 29, 1984) (remarks of Sen. Hatch).

Section 365(d)(3) of the Bankruptcy Code provides in pertinent part as follows:

> The trustee shall timely perform all the obligations of the debtor, ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1). The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.

11 U.S.C. § 365(d)(3).

Thus, under section 365(d)(3), the trustee must timely perform all of the obligations of a debtor under an unexpired lease of nonresidential real property, including making timely rental payments required under the lease. *See* 11 U.S.C. § 365(d)(3). Section 365(d)(3) imposes a duty on the trustee to perform such obligations from the time that the order for relief is entered until the lease is assumed or rejected. *Id.* The trustee's duty under section 365(d)(3) is the same irrespective of whether the case is proceeding under Chapter 7 or Chapter 11 of the Bankruptcy Code, because section 365(d)(3) makes no distinction between cases arising under Chapter 7 or Chapter 11. *See Id.* In drafting section 365(d)(3), Congress selected the verb form "shall." *Id.* The trustee's responsibility timely to perform such obligations, therefore, is mandatory, rather than merely permissive. If the trustee fails timely to perform such obligations, however, the trustee's obligation to the lessor is not discharged. Instead, the lessor is entitled to a post-petition administrative rent claim.

Section 365(d)(3) provides that the trustee must timely perform such obligations "notwithstanding section 503(b)(1)." Webster's Dictionary defines the term "notwithstanding" to mean in spite of. *See* Webster's Twentieth Century Dictionary 1225 (2d ed. 1983). Under section 365(d)(3), therefore, the trustee must make the payments required under an unexpired nonres-

idential real property lease in spite of the requirements in section 503(b) that the expense be allowed only after notice and hearing and that the expense be an actual and necessary cost of preserving the estate.

The facts before this Court are strikingly similar to the facts in three cases in which the lessors were entitled under section 365(d)(3) to administrative rent claims at the rates in their respective leases. *See In re Laurence R. Smith, Inc.*, 127 B.R. 715, 716 (Bankr.D.Conn.1991); *In re Cardinal Indus. Inc.*, 109 B.R. 738, 739–40 (Bankr. S.D.Ohio 1989); *In re W. Monetary Consultants*, 100 B.R. 545, 546 (Bankr.D.Colo. 1989). In each of these cases, the debtor was the lessee of nonresidential real property under a written lease and occupied the leased premises post-petition. The debtor, however, did not operate a business from the leased premises, but instead used the leased premises for storage until it could determine whether to assume or reject the lease. In each case, the debtor ultimately rejected the lease, either affirmatively or through its failure timely to assume the lease. In each of these cases, the court held that under section 365(d)(3), the lessor of the nonresidential real property was entitled to a post-petition administrative rent claim determined at the monthly rental rate provided for in the lease for the entire time period until the debtor rejected the lease. Each of these courts rejected the debtor's contention that the lessor's claim was limited to the storage value of the leased premises because of the language of section 365(d)(3) and the intent of Congress to protect lessors in these situations.

Moreover, any other conclusion would appear to flout Congress' articulated intent in enacting section 365(d)(3). The legislative history to section 365(d)(3) provides in relevant part as follows:

A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease. For cause, the court can extend the time for performance of obligations due during the first 60–day period. At the end of this period, the amounts due during the first 60 days would be required to be paid, and thereafter, all obligations must be performed on time. This permissible 60–day grace period is intended to give the trustee time to determine what lease obligations the debtor has and to locate the cash to make the required payments in exceptionally large or complicated cases.

130 Cong.Rec. at 8894–95 (daily ed. June 29, 1984) (remarks of Sen. Hatch).

Thus, Congress specifically recognized that a lessor of nonresidential real property occupies a very unique, and almost vulnerable, position when a lessee files bankruptcy. In most situations, the lessee has stopped making payments under the lease, despite its contractual obligation to make lease payments. Yet, the lessor must continue to perform all of its contractual obligations and provide all of the services required under the lease. Other creditors often have the opportunity to decide whether to continue doing business with a bankrupt debtor. A lessor of nonresidential real property, however, must wait for the debtor or the trustee to decide whether to assume or reject the lease. It appears that

because of the lessor's unique position and to protect the lessor, Congress enacted section 365(d)(3).

Because of the clear majority rule in interpreting section 365(d)(3), the statutory language of section 365(d)(3), and the legislative intent in the enactment of section 365(d)(3), the court concludes, that under section 365(d)(3), each of the Landlords is entitled to a post-petition administrative rent claim for the full amount of the payments required under its lease through the date that the Court authorized the Trustee's rejection of each lease.

This conclusion also will lead to a fair and just result under the facts before the court. The Trustee has not disputed that either the debtor or he occupied the leased premises. The leased premises were used from the filing of the petition against the debtor through the court's authorization of the Trustee's rejection of the Landlords' leases either in the operation of an ongoing business or for the storage of inventory until it could be inspected and liquidated. In fact, the Trustee moved the court, after being appointed to serve as the Chapter 7 trustee, to have up to and including September 15, 1991 to reject unexpired leases, including those leases of the Landlords. During all of this time, the Landlords were required to continue providing services under their respective leases, despite the trustee's failure to pay any rent to them under the leases. Moreover, the Landlords were required to wait until September 15, 1991 while the Trustee determined whether to assume or reject the leases. Consequently, the Landlords are entitled to a post-petition administrative rent claim in the full amount of the monthly rental rate in the leases.

In arguing that the Landlords' claims must be limited by the storage value of the leased premises, the Trustee relies on the minority courts' holdings that despite the language of section 365(d)(3), a trustee is not required to make the payments required under the leases. *See Great Western Sav. Bank v. Orvco, Inc. (In re Orvco),* 95 B.R. 724, 727–28 (Bankr.9th Cir. 1989); *In re Tammey Jewels, Inc.,* 116

B.R. 292, 294–95 (Bankr.M.D.Fla.1990); *In re Patella,* 102 B.R. 223, 225 (Bankr. D.N.M.1989). This court rejects the reasoning and holdings in these cases, which often have been criticized for their failure to follow the language of section 365(d)(3) and their defiance of Congress' intent in enacting section 365(d)(3).

■ Finally the court concludes that the use of the words "notwithstanding section 503(b)(1) of this title," of necessity clarifies the claims here involved as administrative claims; that the Trustee's liability under section 365(d)(3) is limited to payments from assets of the estate; that such payments must be paid in accordance with the general scheme of priorities under the Code; and that section 365(d)(3) specifies a required payment but does not create any super priority therefor.

NOW, THEREFORE, IT IS ORDERED that:

1. The Trustee's Objections relating to the Landlords' entitlement to a post-petition administrative rent claim at the monthly rental rate provided for in their respective leases and for the other charges provided for in their respective leases be, and it hereby is, *overruled;*

2. The Trustee's Objections relating to the classification of the Landlords' claims as Chapter 7 Administrative Claims, Chapter 11 Administrative Claims, and Gap Period Administrative Claims be, and it hereby is, *sustained;* and

3. The Landlords shall have fourteen days from the entry of this Order and Memorandum of Decision to file amended Proofs of Claim consistent with the provisions of this Order and Memorandum of Decision.