**In re COMPUADD CORPORATION, Debtor.**

**Bankruptcy No. 93–11751–FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

March 23, 1994.

David Waddell, Houston, TX, for Briargrove Center Joint Venture.

Lisa Fancher, Ford & Ferrero, Austin, TX, for Best Square Associates.

Mark Silverstone, Austin, TX, for Sequoia Co.

Mina A. Clark, Jones, Day, Reavis & Pogue, Austin, TX, for Equity Properties & Development Co.—Landlord.

Mark Silverstone, Sneed, Vine, Wilkerson, Selman & Perry, Austin, TX, for Combined Properties Ltd. Partnership; System Realty Six, Inc.

Cynthia Johnson–Rerko, Stutzman & Bromberg, Dallas, TX, for Equitable Life Assur. Soc., Inc. & Virginia Supplemental Retirement System.

C. Daniel Roberts, Austin, TX, for Riverplace Investments, Inc.

Patrick Huffstickler, Cox & Smith, San Antonio, TX, for Brezar Enterprises, DSK Associates & Kelvin Virginia Corp.

Gregory Douglass, Cantilo, Maisel & Hubbard, Austin, TX, for Plantation Fountains Associates LP & Chase Manhattan Bank.

Lisa Fancher, Ford & Ferraro, Austin, TX, for Oakbridge Commons Ltd. Partnership.

Thomas S. Henderson, III, Sheinfeld, Maley & Kay, Houston, TX, and Barbara J. Houser, Mark Agee, Sheinfeld, Maley & Kay, Dallas, TX, for debtor.

James O'Donnell, Andrews & Kurth, Houston, TX, for First Interstate as Agent for the Bank Group.

Lucinda Dennis, Bronson, Bronson & McKinnon, Los Angeles, CA, and Sara Foster, Haynes & Boone, Austin, TX, for Committee of Unsecured Creditors.

Frank M. Laphan, Austin, TX, U.S. Trustee.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The Court held hearings on various Motions for Allowance of Administrative Claims as identified on Exhibit A. Pursuant to the record established at the hearings, the argument of counsel, and the Court's own independent research, this Memorandum Opinion is being entered as Findings of Fact and Conclusions of Law under Bankruptcy Rules 7052 and 9014. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). As such, the Court has jurisdiction to enter a final order under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1), 28 U.S.C. § 151 and the standing Order of Reference in this District.

### Findings of Fact

The Debtor had entered into over one hundred non-residential leases of real property where it conducted its retail sales operations nationwide prior to the filing of this case. However, as of the petition date, the Debtor had closed and moved out of all of these retail locations. So, on the petition date the Debtor was not in physical possession of any of the premises covered by these leases. However, none of the leases were terminated pre-petition.

The Debtor-in-possession waited almost a full month to file its Motion to Reject these leases in order to give itself time to determine whether or not there was some value in the leases to the estate such that it would be prudent to assume and assign some of them. No motion to assume any of the leases was ever filed. No motion seeking an extension of the § 365(d)(1) deadline was ever filed.

All of the leases were rejected as is hereinafter discussed. Deadlines were set for the filing of administrative claims pursuant to § 365(d)(3) of the Bankruptcy Code. Fortunately for the Debtor, only fourteen (14) of these landlords filed § 365(d)(3) claims. At the conclusion of the factual hearings with regard to these claims, this Court made oral findings of fact on the record with regard to each such claim which findings of fact are incorporated herein by reference for all purposes. It is not necessary that all of the factual details of each transaction be recited here as the above general recitation of facts is all that is necessary to frame the legal issues.

### Issues

1. What does the phrase "notwithstanding § 503(b)(1)" mean as used in § 365(d)(3) of the Bankruptcy Code?

2. What is the effective date of rejection; the date of the filing of the Debtor's Motion to Reject, the sixty (60) day time limit contained in § 365(d)(1), or the date the order was entered granting the Debtor's Motion?

### Discussion & Conclusions of Law

1. *What does "notwithstanding § 503(b)(1)" mean?*

The Chief Bankruptcy Judge for the United States Bankruptcy Court for the Western District of Texas and my companion here on the Bench in Austin, the Honorable Larry E. Kelly, has recently issued his Memorandum Opinion analyzing this exact issue in *In re Mr. Gatti's, Inc.*, Debtor, 164 B.R. 929 (W.D.Tex.1994). It contains a scholarly analysis of the historical background of this Code section and of virtually all cases reported to date on this issue; and it categorizes the varying results that have issued primarily from various bankruptcy courts across the nation. That analysis, contained in paragraphs V and VI of his opinion, is incorporated into this opinion by reference. There is clearly no need to attempt to restate what Judge Kelly has already stated in such succinct, clear and understandable language.

My problem, however, is that I cannot convince myself to reach the same result. It is not that I want to reach a different result

from Judge Kelly, as I do not. I think his is the right result in the context of what the law should be. However, I am compelled to reach the opposite result because I regretfully believe that the law compels me do so.

The first inquiry to be made is whether the statutory language in question is ambiguous. Bankruptcy Code § 365(d)(3) provides in relevant part that,

"The trustee shall timely perform all obligations of the debtor, . . ., arising from and after the order for relief under any unexpired lease of non-residential real property, until the lease is assumed or rejected, *notwithstanding § 503(b)(1) of this Title . . . .* ". (emphasis added) 11 U.S.C. § 365(d)(3).

The Chief Bankruptcy Judge of the United States Bankruptcy Court for the Western District of Oklahoma, the Honorable Richard L. Bohanon, has written a scholarly work detailing exactly how we bankruptcy judges in cases such as this are to comply with the United States Supreme Court's admonition to us to simply look at the "plain meaning" of the words used in a statute in our statutory interpretations. See, *In re ZRM–Oklahoma Partnership, aka Lexington Apartments and Motor Inns–Oklahoma,* 156 B.R. 67 (W.D.Okla.1993). Neither will I attempt to restate what Judge Bohanon has stated as I could not improve on his words either; I simply refer the reader to the following quote:

"The Court admonishes that it is rarely necessary to go beyond the language of the statute itself, and that interpretation of the scope of codified law should be arrived at through guidance from the canons of statutory construction based upon a text-based analysis."

*ZRM–Oklahoma Partnership, aka Lexington Apartments and Motor Inns–Oklahoma,* 156 B.R. 67 (W.D.Okla.1993) citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

The first task is to look at the plain meaning of the above cited language of § 365(d)(3). Upon first reading it is clear. The trustee is mandated to *timely* comply with all obligations of the debtor with regard to any unexpired lease of non-residential real property until it is assumed or rejected regardless of what § 503 may require other claimants to do to establish an administrative claim. I fail to see any ambiguity in that language. And, I decline to follow the minority line of cases with which my companion joined and which in my opinion go beyond the clear language of the statute to reach their result. See *In re Orvco,* 95 B.R. 724 (9th Cir. BAP 1989), *In re Southwest Aircraft Services Inc.,* 831 F.2d 848 (9th Cir. 1987), and other cases cited in *In re Mr. Gatti's, Inc.,* 164 B.R. 929 (W.D.Tex.1994).

Those cases initially acknowledge that § 365(d)(3) expresses "a clear and unambiguous intent that the debtor-lessee should pay, pending a decision on whether to assume or to reject the lease;". *In re Gatti's, Inc.,* at pages 942–43. So, we all apparently agree that the language itself is unambiguous. I submit the inquiry should stop at this point in this case. The minority line of cases, however, goes on. Their conclusion results in large part from what is seen as the failure of Congress to provide a remedy with regard to any default of the trustee or the debtor-in-possession under that section. In my opinion, that is not an accurate analysis because § 365(d)(3) is effectively a remedy in and of itself. The language is mandatory. It says "The trustee shall timely perform all obligations of the debtor . . .". 11 U.S.C. § 365(d)(3). Payment of rent is clearly one such obligation. Therefore, under § 365(d)(3) the trustee must make *timely* payment of rent under such leases. It is mandatory. The argument that since Congress did not go further and say that, "and if the trustee does not timely perform such obligations, the court may enter an order requiring the trustee to do so", then the landlord creditor must prove all of the requirements otherwise imposed under § 503(b)(1) in order to be paid its post-petition rent simply does not wash. I submit that the effect of that analysis writes the phrase "notwithstanding § 503(b)(1) of this title" out of the first sentence of § 365(d)(3).

It is true, as Judge Kelly points out, that there are several other remedies available to the landlord creditor in the event of such a default; to-wit: dismissal for cause under

§ 707(a), appointment of a trustee for cause under § 1104(a), conversion or dismissal for cause under § 1112(b), etc. However, that does not mean that the landlord creditor does not also have the remedy to file a pleading with the court asking that the court require the trustee "to perform", i.e. to pay the rent irrespective of the requirements of § 503(b)(1). In fact, this is exactly what the statute provides. The statute has effectively carved payment of rent and other related charges post-petition in an unexpired lease of non-residential real property out of the provisions of § 503(b)(1) pending assumption or rejection. The clear and unambiguous language of the statute not only relieves the landlord of proving the elements that would otherwise be required to establish an administrative claim under § 503(b)(1), but also mandates the payment be timely. Congress changed the law when it added this provision and the change must be given effect. To ignore it would be to enforce the law as it existed in this Circuit prior to the change.

Next we are told by the Supreme Court to, "determine whether the plain meaning of the statute produces a result in conflict with the remainder of the Code." See *ZRM–Oklahoma Partnership, aka Lexington Apartments and Motor Inns–Oklahoma,* supra citing *United States v. Ron Pair Enterprises,* supra. No such conflict has been cited to the Court by any party and none have been found by the Court. As Judge Bohanan puts it, "the Code is the product of various compromises among competing interests in a bankruptcy case, secured creditors, unsecured creditors, equity interest holders and the debtor." *ZRM–Oklahoma Partnership,* supra at p. 71. Clearly, the other parties to the debtor's non-residential real property leases constitute just such a competing interest group as well. "The compromise scheme results in tension between these sometimes conflicting interests. Existence of this tension does not require the conclusion that a provision does not mean what it says." *Ron Pair Enterprises,* supra 489 U.S. at 245, 109 S.Ct. at 1032–33.

For whatever reason, good or bad, Congress, in its finite wisdom, has, after due deliberation, buckled to the intense pressure placed upon it by the lobbyists representing the shopping center landlord associations and has granted them a freebie as part of its balancing of the interests of this type of landlord versus those of debtors. Certainly, it is not logical that a landlord who has terminated the debtor's right to possession of leased premises pre-petition (but has not terminated the lease so that the rent continues to accrue) should be automatically entitled to be paid the full amount of the contractual rent post-petition until the date of rejection in cases such as these where the debtor-in-possession never comes into physical possession of the subject premises. However, there is no requirement in § 365(d)(3) that the debtor-in-possession or the trustee be in actual physical possession of the premises for the payment of contractual rent to be required since § 503(b)(1) and its requirements have been made specifically not applicable to these situations. Regardless of what one might think with regard to the "irrationality" of the concept, the language is clear and must be enforced.

The statute says that the trustee is to timely perform all obligations under these types of leases pending rejection. That means the trustee is to timely pay the rent coming due post-petition under these types of leases pending assumption or rejection. If the trustee does not, then upon proper motion by the landlord, bankruptcy courts should enforce that payment obligation "notwithstanding section 503(b)(1) . . .". The fact that there are other remedies that the landlord can request be imposed under the Bankruptcy Code does not mean that requiring payment of the rent is not also one.

So, what do we call this right to payment? Is it an administrative claim? How could it be? The clear language makes the administrative claim provisions of § 503(b)(1) inapplicable. Is it a super priority claim? Although not denoted as such by Congress, § 365(d)(3) certainly seems to have that effect. However, what we call this type of claim is less important than giving due effect to the statute. And, in this case, the relative priority of the § 365(d)(3) payment rights vis-a-vis § 503(b)(1) administrative claims does not matter since the Debtor's plan is confirmed and there is apparently enough money to pay both types of claims.

## 2. *When does rejection occur?*

■ The Debtor says rejection occurs when it filed its Motion to Reject. A few landlord creditors agree. Most, however, want a full sixty days of rent alleging that rejection occurred sixty days from the petition date pursuant to § 365(d)(1). A few (the really greedy ones) claim rent through the date the Order was entered granting the Debtor's Motion to Reject even though the § 365(d)(1) time limit on assumption or rejection came to pass before the Order was entered.

My conclusion is that rejection occurred by operation of law sixty (60) days from the June 22, 1993 petition date. See 11 U.S.C. § 365(d)(1). The Debtor filed a Motion to Reject all of its shopping leases on July 19, 1993. The Motion did not in and of itself effect rejection. See *Matter of Federated Department Stores, Inc.,* 131 B.R. 808 (S.D.Ohio 1991); *In re Worths Stores Corp.,* 130 B.R. 531 (Bankr.E.D.Mo.1991); *In re Virginia Packaging Supply Co.,* 122 B.R. 491 (Bankr.E.D.Vir.1990); *In re Revco, D.S., Inc.,* 109 B.R. 264 (Bankr.N.E.Ohio 1989); *In re Four Star Pizza, Inc.,* 135 B.R. 498, 501 (Bankr.W.D.Penn.1992); *In re Garfinckles, Inc.,* 118 B.R. 154 (Bankr.D.C.1990); *In re D–Lites of America, Inc.,* 86 B.R. 299 (Bankr.N.D.Ga.1988); *In re National Oil Co.,* 80 B.R. 525 (Bankr.D.Colo.1987); and *In re Swiss Hot Dog Co.,* 72 B.R. 569 (D.Colo. 1987). An order ("court approval") under § 365(a) is required in order for a proposed assumption or rejection to be effective. And, in this case where the Debtor seeks only rejection, effectiveness occurs upon the earlier of the court order approving the rejection or the passage of sixty (60) days from the petition date by virtue of § 365(d)(3).

Further, the fact that a motion to reject was pending on the sixtieth day after the petition date does not mean that § 365(d)(1), which provides for automatic rejection of these types of leases if they have not been assumed or rejected within such sixty (60) day period, somehow became ineffective or was tolled. There was no motion to assume pending. There was no motion to extend the time to assume or reject pending. There was only a Motion to Reject. The plain language of the statute is, therefore, inescapable. Rejection occurred here sixty days from the petition date regardless of the fact that there was pending on that date the Debtor's Motion to Reject. Further, the fact that the Court subsequently entered an Order rejecting such leases upon the Debtor's Motion is irrelevant to the effect of § 365(d)(1). That Order was ineffective as the leases were rejected by operation of law prior to that Order being entered. It should not have been entered as the operation of § 365(d)(1) had mooted the Debtor's Motion to Reject.

■ At least one claimant has argued that since the Debtor filed an application to extend the time within which to either assume or reject four non-related separate executory contract agreements and since that application contained boilerplate language that, read literally, could be applied to cover all of the Debtor's executory contracts, the rejection date should be the date of the Order entered by this Court on the Debtor's Motion to Reject these shopping center leases and not the time period set in § 365(d)(1). Reading the entirety of the motion to which this creditor/landlord refers, and not just the one isolated section which the claimant cites, makes it clear that, the boilerplate language to the contrary notwithstanding, the motion was neither intended to have, nor should it be read as having, any effect upon the landlord leases which were clearly already subject to a pending motion to reject. Accordingly, that argument is rejected.

### Conclusion

Even though the Debtor-in-possession was never in physical possession of any of its 100 plus shopping center store locations, those landlords who filed motions compelling payment of rent and other charges under § 365(d)(3) are entitled an order requiring it to pay the rent and other charges under the lease which came due and owing during the sixty-day period following the petition date, save and except those few situations in which the landlord sought a lesser period of time of rent, as all leases were in effect on the petition date and were not rejected until the sixtieth day thereafter. All landlord creditors that requested attorney's fees as one of the "obligations" due under § 365(d)(3) will be required to bring those requests on for

hearing with additional pleadings as that issue was reserved for future consideration by agreement of the parties. Such pleadings should be filed no later than thirty (30) days from the date of this Memorandum Opinion.

All of the landlords receiving benefits under this Memorandum Opinion should immediately either write their Congressman and give them thanks for this "gift" that they have received or take their favorite lobbyist out to dinner.

In the past sixty years of our government's existence, Congress has increasingly demonstrated its commitment to awarding entitlements to many varied and sundry special interest groups and requiring the country's taxpayers to fund those special entitlement payments. Here we have a different kind of special entitlement payment. I suppose all of us taxpayers who are not shopping center owners should simply be thankful that Congress did not make this entitlement an obligation for payment out of the general revenue of the United States Government.

Counsel for the respective landlord creditors are requested to submit proposed orders to implement this Memorandum Opinion as to each of their landlord creditor clients.

## EXHIBIT A

No. 93–11751, CompuAdd Corporation

(# 392) Motion by Creditor Briargrove Shopping Center Joint Venture for Allowance of Administrative Rent as First Priority Administrative Expense

| | |
|---|---|
| Counsel for Briargrove Center Joint Venture | David Waddell 5847 San Felipe, Suite 2200 Houston, Texas 77057 |

(# 236) Motion by Creditor Best Square Associates for Payment of Post–Petition Rent

| | |
|---|---|
| Counsel for Best Square Associates | Lisa Fancher Ford & Ferrero 98 San Jacinto Blvd., Suite 2000 Austin, Texas 78701–4039 |

(# 463) Application by Creditor Sequoia Company for Allowance and Payment of Administrative Claim

| | |
|---|---|
| Counsel for Sequoia Company | Mark Silverstone P.O. Box 1409 Austin, Texas 78767 |

(# 469) Motion by Creditor Equity Property & Development Company to Compel Payment of Administrative Expense to Equity Property & Development Company, a Division of Equity Property Management Corp.

| | |
|---|---|
| Counsel for Equity Properties & Development Company —Landlord | Mina A. Clark Jones, Day, Reavis & Pogue 301 Congress Ave., Suite 1200 Austin, Texas 78701 |

(# 465) Application by Creditor Combined Properties, Inc. for Allowance and Payment of Administrative Claim of Combined Properties, Ltd.

| | |
|---|---|
| Counsel for Combined Properties Limited Partnership | Mark Silverstone Sneed, Vine, Wilkerson, Selman & Perry P.O. Box 1409 Austin, Texas 78767 |

(# 490) Application for Allowance and Payment of Administrative Claim of System Realty Six, Inc.

Counsel for Combined          Mark Silverstone
Properties Limited            Sneed, Vine, Wilkerson, Selman & Perry
Partnership; System           P.O. Box 1409
Realty Six, Inc.              Austin, Texas   78767

(# 524) Motion for Reconsideration of Order Striking Motion, and In the Alternative, Administrative Motion of the Equitable Life Assurance Society of the U.S. and VA Supplemental Retirement System to Compel Payment of Administrative Expense Claim

Counsel for Equitable         Cynthia Johnson–Rerko
Life Assurance Society,        Stutzman & Bromberg
Inc. & Virginia Supple-        2323 Bryan Street, Suite 2200
mental Retirement             Dallas, Texas   75201
System

(# 506) Application by Creditor Riverplace Investments, Ltd. for Allowance of Administrative Expense

Counsel for Riverplace        C. Daniel Roberts
Investments, Inc.             1515 Capital of Texas Hwy. So., Suite 415
                              Austin, Texas   78746

(# 577) Application by Creditor Brezar Enterprises for Payment of Administrative Expense

(# 576) Application by Creditor DSK Associates for Payment of Administrative Expense

(# 483) Notice by Creditor Kelvin Virginia Corporation of Motion for an Order (1) Deeming Lease Rejected, Pursuant to 365(d)(3), etc. (2) Authorizing Kelvin Virginia Corp. an Allowed Claim for Administrative Rent, etc. and (3) Granting Related Relief

Counsel for Brezar            Patrick Huffstickler
Enterprises, DSK              Cox & Smith
Associates & Kelvin           112 E. Pecan St., Suite 2000
Virginia Corp.               San Antonio, Texas   78205

(# 496) Motion by Creditor Plantation Fountains Associates Ltd. Partnership for Payment of Administrative Claim

(# 495) Motion by Creditor Chase Manhattan Bank for Payment of Administrative Claim

Counsel for Plantation        Gregory Douglass
Fountains Associates          Cantilo, Maisel & Hubbard
LP & Chase Manhattan          111 Congress Ave., Suite 1700
Bank                         Austin, Texas   78701

(# 488) Application by Creditor Oakbridge Commons Ltd. Partnership for Payment of Administrative Expense

Counsel for Oakbridge         Lisa Fancher
Commons Limited              Ford & Ferraro
Partnership                  98 San Jacinto Blvd., Suite 2000
                              Austin, Texas   78701–4039

Counsel for Debtor            Thomas S. Henderson, III
                              Sheinfeld, Maley & Kay
                              3700 First City Tower
                              Houston, Texas   77002–6797
                                    and
                              Barbara J. Houser
                              Mark Agee

Sheinfeld, Maley & Kay
1700 Pacific Ave., Suite 4400
Dallas, Texas  75201

Counsel for First
Interstate as Agent
for the Bank Group
    James O'Donnell
Andrews & Kurth
4200 Texas Commerce Tower
Houston, Texas  77002

Counsel for Committee
of Unsecured Creditors
    Lucinda Dennis
Bronson, Bronson & McKinnon
444 South Flower St., 25th Floor
Los Angeles, California  90071–2958
   and
Sara Foster
Haynes & Boone
600 Congress Ave., Suite 1600
Austin, Texas  78701

U.S. Trustee
    Frank M. Laphan
Office of U.S. Trustee
300 E. 8th St., Rm. 908
Austin, Texas  78701