**In re FLORIDA LIFESTYLE APPAREL, INC. d/b/a Jeans USA, Debtor.**

**Bankruptcy No. 97–04202–6J1.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 8, 1997.

James H. Monroe, Orlando, FL, for Debtor.

Amprop Corporation, c/o Michael Paasch, Orlando, FL, for Movant.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CREDITOR'S MOTION TO COMPEL PAYMENT OF POST–PETITION RENT*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on August 20, 1997, on the Motion To Compel Payment Of Post–Petition Rent (Doc. No. 48) ("Motion") filed by Amprop Corporation ("Creditor"). The Creditor filed initial and supplemental Memorandums of Law in Support of the Motion (Doc. Nos. 54 and 58) claiming post-petition rents for the months of June and July. The debtor, Florida Lifestyle Apparel, Inc. (the "Debtor"), also filed a Memorandum in opposition to the Motion contending that no post-petition rents are due (Doc. No. 59). After considering the stipulated evidence presented, reviewing the pleadings and considering the arguments of counsel and applicable law, the Motion is partially granted and partially denied.

*Lease.* The facts are undisputed. In November, 1995, the Creditor leased commercial retail space to the Debtor pursuant to a written lease agreement (the "Lease") (Creditor's Exhibit Nos. 1 and 2). On May 18, 1997, the Debtor ceased doing business at the premises. On May 19, 1997, the Debtor informed the Creditor that it had vacated the premises and surrendered the keys to the Creditor. The Creditor subsequently changed the locks and attempted to relet the premises.

On May 22, 1997, the Debtor filed this Chapter 11 case (the "Petition Date"). On May 28, 1997, the Debtor promptly filed a motion to reject the Lease (Doc. No. 9). On June 3, 1997, an order directing the Creditor to respond within 30 days to the Debtor's motion to reject the Lease was entered (Doc. No. 24). The Creditor timely filed its consent to the rejection on July 2, 1997 (Doc. No. 42). On July 9, 1997, an order granting the Debtor's motion to reject the Lease was entered (Doc. No. 45). The Creditor then filed this Motion seeking post-petition rents for the months of June and July totaling $31,639.00. Pursuant to the Lease, rent is due on the first day of each month in the amount of $15,819.36.

*Termination of Commercial Lease.* Termination of a lease requires a finding of an intent to surrender the leased premises by the lessee and the acceptance of the surrender by the lessor. *In Matter of Potomac Systems Engineering Inc.,* 208 B.R. 561, 563 (Bankr.N.D.Ala.1997), *citing In re Steven Windsor Inc.,* 201 B.R. 133, 135 (Bankr. D.Md.1996). To determine whether the lease was terminated before the filing of bankruptcy, state law controls. *Id.*

In Florida, a landlord has three options when a tenant defaults under a lease. *Hudson Pest Control, Inc. v. Westford Asset Management, Inc.,* 622 So.2d 546, 548 (Fla. 5th DCA 1993). First, a landlord may treat the lease as terminated and retake possession for her own purposes. *Id.* Second, a landlord may retake possession on account of

the tenant and hold the tenant responsible for damages measured by the difference between the stipulated rent and the amount the landlord receives from reletting the premises. *Id.* Third, the landlord may do nothing and sue the tenant as each installment matures or for the full amount of the rental due when the lease terminates. *Id.* at 549.

▪▪▪ If a written lease exists, however, the provisions of the lease are conclusive and govern the rights of the parties. *In re GISC, Inc.,* 130 B.R. 346, 348 (Bankr.M.D.Fla.1991), *citing In re Rodeway Inns of America v. Alpaugh,* 390 So.2d 370, 372 (Fla. 2d DCA 1980). Section 19 of the Lease in this case, titled "Landlord's Remedies," expressly provides the remedies available to the Creditor when the Debtor breached the Lease. Creditor's Exhibit 1. Section 19 allows the Creditor to resume possession of the premises without terminating the lease, to terminate the lease and collect various damages, to relet the premises without terminating the lease and without acceptance of a surrender of the lease, or to terminate the lease and collect various damages. Therefore, in this case, the Creditor could reclaim possession of the leased premises and attempt to relet the space without terminating the Lease. No evidence indicates that the Creditor affirmatively expressed any intent to accept the surrender of the property. Accordingly, even though the Debtor clearly had returned the property to the Creditor, the Lease was not terminated prior to the Petition Date.

▪▪▪ *Entitlement of Post–Petition Rents.* Section 365(d)(3) of the Bankruptcy Code provides in relevant part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1)

of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period....

11 U.S.C. Section 365(d)(3) (1994). Courts disagree on how to interpret Section 365(d)(3).

A majority of courts interpret Section 365(d)(3) as granting the lessor an automatic administrative expense for the normal rental payments accruing post-petition. *See, e.g., Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.),* 27 F.3d 401, 404–405 (9th Cir.1994); *In re Compuadd Corporation,* 166 B.R. 862, 865 (Bankr. W.D.Tx.1994); *In re CSVA, Inc.,* 140 B.R. 116, 121 (Bankr.W.D.N.C.1992); *See,* 3 Collier on Bankruptcy, Paragraph 365.04[3][f][ii] at 365–39 (15 ed.1997). The literal language of Section 365(d)(3) which requires a trustee to perform all obligations under leases of nonresidential real property, including the obligation to make timely rent payments, is interpreted to waive the requirement that the lessor must demonstrate that the estate benefited from the post-petition rental charge which would otherwise be required pursuant to Section 503(b)(1)[1] of the Bankruptcy Code. *Id.*

A minority of courts have interpreted Section 365(d)(3) to continue to require the lessor to show the value received by the estate during the period preceding rejection of the lease pursuant to Section 503(b)(1). *See, e.g., In re Tammey Jewels, Inc.,* 116 B.R. 292, 295 (Bankr.M.D.Fla.1990); *Great Western Savings Bank v. Orvco, Inc. (In re Orvco, Inc.),* 95 B.R. 724, 728 (9th Cir. BAP 1989). However, this interpretation fails to give effect to the language in Section 365(d)(3) that the trustee must comply with all lease obligations "notwithstanding section 503(b)(1) of this title[2]." *Towers v. Chickering & Gregory (In*

---

1. Section 503(b)(1) provides that only actual and necessary costs and expenses that preserve the estate shall be allowed as an administrative expense. 11 U.S.C. Section 503(b)(1)(A) (1994).

2. In fact, in *Tammey Jewels* and *Orvco,* the leases in question were rejected by operation of law under Section 365(d)(4) after 60 days. Neither

the debtor nor creditor in these cases moved the bankruptcy court to assume or reject the leases. Implicitly, these courts had a difficult time in granting an administrative claim to a creditor who sat back and watched her administrative claim grow. Contrary to *Tammey Jewels* and *Orvco,* the lease here was not rejected by opera-

re Pacific–Atlantic Trading Co.), 27 F.3d at 404–405; In re Compuadd Corporation, 166 B.R. at 865.

The plain language of Section 365(d)(3) mandates the trustee to comply with all obligations of the debtor with regard to any unexpired lease of non-residential real property until it is assumed or rejected *regardless* of Section 503(b)(1). In re Compuadd Corporation, 166 B.R. at 864. Furthermore, the legislative history shows that Congress enacted Section 365(d)(3) to protect commercial landlords because they were forced to provide current services without current payment pending the assumption or rejection of the lease. Great Western Savings Bank v. Orvco, Inc. (In re Orvco, Inc.), 95 B.R. at 727. The plain language of the statute shall control. A debtor or trustee must pay all normal rental payments in commercial space until the lease is rejected.

■ *Administrative Priority of Claim.* Courts also disagree on whether the lessor is entitled to a "super-priority" administrative claim for rent during the period preceding the rejection of the lease. The courts that recognize the super-priority status of the claim rely on the language in Section 365(d)(3) which requires the trustee to "timely perform all the obligations of the debtor." In re Telesphere Communications, Inc., 148 B.R. 525, 531 (Bankr.N.D.Ill.1992). However, a majority of courts require the lessor to stand in line with the other administrative claimants. See, e.g., In re Joseph C. Spiess Company, 145 B.R. 597, 607–608 (Bankr. N.D.Ill.1992), citing In re CSVA, Inc., 140 B.R. 116, 121 (Bankr.W.D.N.C.1992), In re Virginia Packaging Supply Co., 122 B.R. 491, 495 (Bankr.E.D.Va.1990), In re Wingspread Corp., 116 B.R. 915, 932 (Bankr. S.D.N.Y.1990). These courts reasoned that the language in Section 365(d)(3) does not expressly elevate post-petition claims to super-priority status. Id.

All claims subject to super-priority administrative status are listed in Section 364 of the Bankruptcy Code. Post-petition rent payments are not included. Id. Congress knew

how to grant super-priority status and did not expressly do so under Section 365(d)(3). Id. Accordingly, the better approach is to literally interpret the statute and to reject any super-priority administrative status for the lessor's claim. The lessor is placed in the same position as other administrative claimants. Id.; See, also, 3 Collier on Bankruptcy, Paragraph 365.04[3][f][ii] at 365–41 (15 ed.1997).

■ *Effective Date of Rejection.* An issue exists as to whether the effective date of rejection for Section 365(d)(3) purposes is the date of the bankruptcy court's order approving rejection *or* the date the debtor gives notice to the landlord of its rejection. Constant Limited Partnership v. Jamesway Corporation (In re Jamesway Corporation), 179 B.R. 33, 37 (S.D.N.Y.1995). Because the bankruptcy court's approval is a condition precedent to an effective rejection, the better view is that 365(d)(3) charges continue to accrue up to the date the rejection actually occurs, either by court order or by passage of the 60 day rejection period. Id. In re Worths Stores Corp. d/b/a N.E.T. Works, 130 B.R. 531, 533 (Bankr.E.D.Mo.1991). The court order authorizing rejection of a lease would be meaningless if the effective date of rejection was the date the debtor gave unequivocal notice to reject the lease. Id. at 534. In addition, the requirement of a court order or the passage of time insures the finality which a landlord would need prior to releasing the leased space. Id. If the debtor is aggrieved by the delay resulting in obtaining a court order approving the rejection of a lease, the debtor should seek an expedited hearing to consider the lease rejection. See, In re Worths Stores Corp. d/b/a N.E.T. Works, 130 B.R. at 533–534. Thus, the effective date to determine the rejection of a lease and by extension, the date the administrative claim stops accruing under Section 365(d)(3), is the date when the bankruptcy court enters an order approving rejection, here, July 9, 1997.

tion of law. The Creditor did not sit back and attempt to delay the rejection of the lease. In fact, the Creditor timely filed its consent to the

rejection of the lease pursuant to this Court's order.

*Analysis.* Debtor argues that the Lease was terminated prior to the Petition Date. The Debtor clearly had abandoned the leased premises and surrendered the keys. The Creditor had changed the locks and advertised the premises for rent before the Debtor filed for bankruptcy. However, these actions do not result in the termination of the Lease under Florida law or under the specific terms of the Lease. Under Florida landlord-tenant law, a landlord may retake possession of the premises on the tenant's behalf without terminating the lease. Further, Section 19 of the Lease specifically provided that the Creditor could do just that. No evidence indicates that the Creditor intended to terminate the Lease. The fact that the Creditor changed the locks and attempted to relet the premises does not show an intent of the Creditor to relieve the Debtor of its responsibilities under the Lease. On the contrary, the Creditor was merely trying to protect the premises from damage and also perform its duty to mitigate the damages accruing against the Debtor. As such, the Lease was not terminated as of the Petition Date.

The Debtor next urges this Court to adopt the minority interpretation of Section 365(d)(3) and hold that the Creditor must show some benefit to the estate before the Creditor is entitled to an administrative claim for the post-petition rent. The plain language of Section 365(d)(3) does not require the landlord to make such a showing. Indeed, the statutory language specifically provides that a landlord is entitled to post-petition rents regardless of whether it would be entitled to such an administrative expense claim under Section 503(b)(1). Thus, the Creditor is entitled to an administrative claim for the full amount called for in the Lease without considering the requirements imposed by Section 503(b)(1).

The Creditor then argues that their administrative claim should be considered a super-priority claim payable immediately or at least ahead of other administrative claims. Section 365(d)(3) does not expressly grant any such super-priority status. Congress knew how to grant super-priority status and did not explicitly do so with regard to Section 365(d)(3). Accordingly, the Creditor's claim under Section 365(d)(3) is entitled to the same payment and priority as other unpaid administrative claims.

In calculating the amount of this claim, Debtor argues that the Lease was effectively rejected on the date the Debtor filed its motion to reject, May 28, 1997, a total of six days from the Petition Date. The Court does not accept this position. No evidence was presented which indicated the Creditor used delay tactics to prolong the time before the issuance of the order approving the rejection of the lease. In fact, the Creditor timely responded to the order requiring a response within 30 days. Furthermore, the Debtor could have moved for an expedited hearing to consider the rejection of the Lease but chose not to do so. Thus, Creditor is entitled to an administrative claim from the Petition Date to July 9, 1997. Because rent is payable on the first day of each month, the claim will include the full rental payment for both June and July, 1997. Accordingly, the Debtor owes the Creditor rent as an administrative claim in the amount of $31,639.00.

The express statutory language of Section 365(d)(3) dictates this result, not necessarily fairness. The Debtor has to pay the full amount of rent accruing under the Lease for two full months after the Petition Date. This is true despite the fact the Debtor did not occupy the premises post-petition and the estate received no benefit from the Lease. The Debtor certainly was acting in good faith to relieve itself of the burden of the Lease and to assist the Creditor in releasing the premises. No eviction was necessary. The keys were voluntarily surrendered. However, Section 365(d)(3) was clearly drafted to produce such a result. Congress drafted Section 365(d)(3) to protect commercial landlords, not debtors. This Court is not in a position to rewrite Section 365(d)(3) or invoke Section 105(a) in an effort to obtain a more equitable result when Section 365(d)(3) clearly mandates this decision.

*Conclusion.* The Creditor has an administrative claim for the rent in the amount of $31,639.00 for the months of June and July. The Motion is partially granted and partially denied. A separate order consistent with

these findings of fact and conclusions of law shall be entered.