**In re UNITED WEST, INC., a corporation, Debtor.**

**Bankruptcy No. BK–S–88–00150–LBR. Motion No. 88–MS–292–LBR.**

United States Bankruptcy Court, D. Nevada.

June 24, 1988.

Edward S. Coleman, Las Vegas, Nev., for debtor.

Rene Ellen Feinstein of Wanderer and Wanderer, Las Vegas, Nev., and Raymond H. Aver of Rosen, Wachtel & Gilbert, Los Angeles, Cal., for movant.

MEMORANDUM DECISION

LINDA B. RIEGLE, Bankruptcy Judge.

## FACTS

Through a series of letters, Jonas Enterprises, Inc. (Lessor) and the debtor entered into a month-to-month lease of certain commercial real property located in California. The debtor filed a chapter 11 bankruptcy petition on January 20, 1988. On March 4, 1988, the Lessor filed a motion to lift stay based in part upon the debtor's failure to make any post-petition rental payments. No motion to assume or reject the lease was made by the debtor prior to the March 28th hearing on the Lessor's lift stay motion.

In its motion, the Lessor sought termination of the lease and immediate payment of administrative rent. In response, the debtor argued, first, that section 365(d) is not applicable if a tenant is renting on a month-to-month basis and if such arrangement has not been memorialized by a formal written lease agreement. Secondly, the debtor argued that it was excused from paying rent because the Lessor had allegedly defaulted in the making of certain repairs. Alternatively, the debtor asserted that the amount of rent to be paid should be reduced to compensate for the fact that such repairs had not been made.

For the reasons set forth below, this court entered an order awarding immediate possession of the premises to the Lessor. The court then took the remaining issues under submission.

## DISCUSSION

■ The debtor in the present case made no attempt to assume or reject its lease within the time prescribed by section 365(d). Accordingly, the lease was deemed rejected 60 days from the date of filing,[1] *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848 (9th Cir.1987), and the Lessor was

---

1. While this court could ultimately determine that no rent was due because of offset, such a decision in no way affects the automatic termination which resulted from the debtor's failure to assume. In order for the debtor to have assumed the lease, it would have had to make the appropriate motion and tender the rent due under the lease within the statutory time prescribed in section 365(d).

entitled to immediate possession of the premises. 11 U.S.C. § 365(d)(4). Contrary to the debtor's argument, it is irrelevant for purposes of section 365(d) that the debtor did not have a written lease or that it rented on a month-to-month basis. Pursuant to section 365(m) *"any* rental agreement to use real property" constitutes a lease of real property for purposes of section 365. (Emphasis added). In the case at bar, such an agreement to rent was clearly established by the evidence presented.

1. *The Right to Immediate Payment.*

The Lessor's motion to compel immediate payment of post-petition rent is based upon section 365(d)(3) which provides in pertinent part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.

11 U.S.C. § 365(d)(3).

The purposes which Congress sought to achieve by amending section 365(d) can be gleaned, at least in part, from relevant legislative history:

> A second and related problem is that during the time the debtor has *vacated space but has not yet decided whether to assume or reject the lease,* the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.
>
> The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong. Rec. 58994–95 (daily ed. June 29, 1984) (remarks of Senator Hatch). (Emphasis added).

While the language of section 365(d)(3) and the legislative history to that section appear to require "timely" payment of rent *during* the 60 days prior to assumption or rejection of a lease, section 365(d)(3) is not determinative in a situation where the lease has been deemed rejected. 3 L. King, *Collier on Bankruptcy* ¶ 503.04[ii] at p. 503–27, n. 22 (15th ed.). Section 365 does not set forth any remedy for the nonpayment of these sums, *Southwest Aircraft,* 831 F.2d at 853. It does not displace the distribution scheme contained in section 726, grant any kind of "super priority" for payment of these post-petition rents, *see, e.g., In re Tandem Group, Inc.,* 61 B.R. 738 (Bankr.C.D.Cal.1986), or alter the long-standing rule that the court has broad discretion over the *timing* of payment of administrative claims. *In re Verco Industries,* 20 B.R. 664 (9th Cir. BAP 1982). *See also In re TDC Development Corp.,* 73 B.R. 135, 137 (Bankr.N.D.Tex.1987) (providing, without discussion, for the payment of rental upon confirmation of the plan); *Contra, In re Galvan,* 57 B.R. 732 (Bankr.S.D. Cal.1986).

The language of section 365(d)(3) which states, "notwithstanding section 503(b)(1)," is irrelevant vis-a-vis the time for making disbursement on a claim. Section 503(b)(1) provides:

> After notice and a hearing, there shall be allowed administrative expenses, other

than claims allowed under section 502(f) of this title, including—

The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1).

Clearly, section 503(b)(1) deals only with the procedural predicate to the payment of an administrative claim and not with the timing of disbursing such payment once allowed. Such a distinction is further illustrated by examining section 331 and the cases which have considered the timing of the payment of interim fees.

Section 331 is the only provision of the Code which even facially allows for the payment of certain administrative expenses prior in time to any other.[2] While section 331 expressly authorizes immediate disbursement, that provision does not alter the rule that all administrative creditors are to be treated equally, *see* 11 U.S.C. §§ 507, 726(b) and 1129(a)(7)(A), and that chapter 7 administrative expenses have priority over chapter 11 administrative expenses. 11 U.S.C. § 726(b). *See e.g., In re IML Freight, Inc.*, 52 B.R. 124 (Bankr.Utah 1985). Accordingly, even though payment is expressly authorized prior to the end of the case, such compensation may be deferred, *see, e.g., In re Nana Daly's Pub, Ltd.*, 67 B.R. 782 (Bankr.E.D.N.Y.1986), or may be subject to surcharge, *see, e.g., In re Barron*, 73 B.R. 812 (Bankr.S.D.Cal.1987).

While Congress made several amendments in the commercial landlord-tenant area, it did not amend sections 507 or 726 to provide for a "super priority" nor can the provisions of section 365 be read to imply such a priority. As the Second Circuit noted in *Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98 (2d Cir.1986):

The Bankruptcy Code, 11 U.S.C. § 507, defines those expenses and claims against a bankruptcy estate that are entitled to priority in a bankruptcy proceeding. Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.... "[I]f one claimant is to be preferred over others, the purpose should be clear from the statute."

789 F.2d at 100–101. (Citations omitted).

■ This court finds, therefore, that the timing of the payment of this administrative claim, like all other administrative claims, is within the discretion of the bankruptcy court. In exercising its discretion, the court must consider, *inter alia,* the status of the case, the ability of the debtor to pay for all administrative expenses, and the efficacy of the remedy of immediate payment subject to surcharge. As no evidence has yet been taken on these issues, this court will defer its ruling pending a further evidentiary hearing.

2. *The Availability of State Law Defenses.*

■ During oral argument, the Lessor also argued that based upon the "Shopping Center Amendments" to section 365 and the legislative history to those amendments,[3] the court cannot entertain any defenses to the payment of post-petition rent. Such a reading ignores other applicable provisions of the Bankruptcy Code and would afford landlords greater protections than Congress had envisioned.

It is this court's view that the so-called "shopping center amendments" were in no way intended to eliminate legitimate de-

---

**2.** Section 331 provides:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is

provided under section 330 of this title. After notice and a hearing, the court may allow and *disburse* to such applicant such compensation or reimbursement. (Emphasis added).

11 U.S.C. § 331.

**3.** Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984).

fenses that the debtor may have under state law to the payment of rent or the performance of other obligations under a lease. Those amendments instead dealt, *inter alia,* with issues regarding whether or not it was appropriate for a bankruptcy court to make determinations regarding "reasonable rental value" based upon use and occupancy during the period prior to assumption or rejection. *See Matter of Longua,* 58 B.R. 503 (Bankr.W.D.Wis.1986) and cases cited therein.

Section 558 of the Bankruptcy Code expressly states that the estate has the right to assert any defense available to the debtor. That section provides:

> The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

11 U.S.C. § 558. Nothing in the language of section 365 nor in the legislative history in any way contradicts or limits this provision.

## CONCLUSION

This matter will be set for an evidentiary hearing to determine the amount of rent which is due, and when such rents, if any, should be paid.