## In re PUDGIE'S DEV. OF NY, INC., et al., Debtors.

Bankruptcy Nos. 96 B 21969 (ASH) to 96 B 21976 (ASH), 96 B 21976 (ASH), 96 B 22027 (ASH), 96 B 22035 (ASH), 96 B 22163 (ASH) to 96 B 22181 (ASH).

United States Bankruptcy Court, S.D. New York, White Plains Division.

Nov. 27, 1996.

Rattet, Hollander & Pasternak, L.L.P. by Jonathan S. Pasternak, Harrison, NY, for Debtors.

Jeff Morgenstern, Carle Place, NY, for Creditor–Landlord Martin Winter.

## DECISION ON CLAIM FOR RENT UNDER 11 U.S.C. § 365(d)(3)

ADLAI S. HARDIN, JR., BANKRUPTCY JUDGE.

On September 18, 1996 Pudgie's Chicken, Inc., Pudgie's Famous Chicken, Ltd. and six affiliated Pudgie corporate entities filed petitions under Chapter 11 of the Bankruptcy Code, and on September 24, September 25, October 4 and October 10 some twenty-two additional Pudgie–affiliated corporate entities filed Chapter 11 petitions. The thirty Chapter 11 cases of the Pudgie affiliates (hereinafter the "debtors") were procedurally consolidated by order dated October 15, 1996.

Certain of the debtors, as tenants, were parties to pre-petition leases or subleases for non-residential real property upon which they operated fast food poultry stores. Prior or subsequent to filing, certain of these leased premises (the "abandoned premises") were abandoned by the debtor-lessees, which vacated the abandoned premises and sold or otherwise removed their equipment and fixtures. The debtors have made no post-petition payments of rent with respect to the abandoned premises. Despite the abandonment and termination of rental payments, the debtors not only did not relinquish possession of the abandoned premises but moved to extend their time to assume or reject those leases, asserting that more time was necessary to determine whether the leases had value. Various of the landlords opposed the motion and cross-moved for relief from the automatic stay or to require immediate rejection of the leases and relinquishment of the abandoned premises. One landlord also moved to require the immediate payment of post-petition rent pursuant to 11 U.S.C. § 365(d)(3). At the hearing on these motions on November 14, 1996, I denied the debtors' motion to extend time to assume or reject, granted the landlords' motions to reject the leases and ordered the debtors to turn over possession of all of the abandoned premises to the landlords forthwith.

■ The remaining issues, not clearly addressed by further briefing by the parties subsequent to the November 14 hearing, are (1) whether the landlords are entitled to payment of all post-petition rents under 11 U.S.C. § 365(d)(3) at the full lease rate and (2) whether such payment should be immediate. The statute provides, in relevant part:

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but

the time for performance shall not be extended beyond such 60–day period.

The landlords, citing some of the cases discussed below, rely on the express language of the statute for the proposition that they are entitled to be paid all post-petition rent now. The debtors do not discuss or even cite any of the authority addressing the issue under section 365(d)(3), relying instead upon cases strictly construing the terms "actual" and "necessary" as used in section 503(b)(1)(A) and cases standing for the proposition that "the test is 'whether any benefit was conferred upon the estate from the expenses sought to be granted administrative status.'" The debtors argue that the abandoned premises have conferred no substantial benefit upon the estate, that it would be inequitable to pay administrative claims to the landlords at this time while other administrative creditors must await payment, that the Chapter 11 cases are in a formative and critical stage and that the debtors' overall cash flow is limited and restricted.[1]

The statute is clear and unambiguous. The first sentence of section 365(d)(3) states that the trustee or debtor *"shall"* perform *"all the obligations"* of the debtor arising post-petition, and shall do so *"timely"*. The second sentence permits the Court to extend, for cause, the time for performance of such an obligation arising within sixty days after filing, "but the time *for performance shall not* be extended beyond such 60–day period."

On the first issue, the majority of the case law under section 365(d)(3) holds that a landlord is entitled to payment at the full lease rate and that the "benefit test" to which the debtors refer is not applicable. In *In re Wingspread Corp.*, 116 B.R. 915, 926 (S.D.N.Y.1990), Judge (now Chief Judge) Brozman viewed the statute as meaning that

irrespective of whether the payments required under the lease meet the usual requirements for administrative status, rea-

sonableness and benefit to the estate, they are unconditionally due.... By requiring the trustee to pay "all obligations of the debtor," Congress could not have meant for the court to look into the reasonableness which the debtor utilized the premises during the 60 day period, for otherwise, Congress would not have said *all* obligations. (emphasis in original).

Judge Brozman also referred to the legislative history of the 1984 amendment as follows:

... The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that the debtor-tenants pay their *rent,* common area, and other charges on time pending the trustee's assumption or rejection of the lease. *Id.* (citing 130 Cong.Rec. S8894, S8895 (1984) (emphasis in decision)).[2]

Similarly, in *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 882–83 (Bankr. E.D.N.Y.1986). Judge Feller stated:

Section 365(d)(3) ... requires ... payment of all rents reserved under the lease until the lease is assumed or rejected.... This obligation is made expressly independent of the normal standards for administrative expense claims under section 503(b)(1) and constitutes an administrative expense payable without notice and a hearing.

Moreover, courts have applied the requirement where the debtor has either vacated or was not using all of the leasehold premises during the post-petition, pre-rejection period. *See In re Compuadd Corp.*, 166 B.R. 862, 866 (Bankr.W.D.Tex.1994) ("Even though the Debtor-in-possession was never in physical possession of any of its 100 plus shopping center locations, those landlords who filed motions compelling payment of rent and other charges under § 365(d)(3) are entitled an

---

1. The debtors also assert that some or all of the debtor-lessees of the abandoned premises may be shell corporations with no assets. Such fact, if true, may raise difficult issues for the debtors and further motion practice in the future, but does not constitute a defense to the landlords' entitlement to payment.

2. The guarantor's request for immediate payment was denied in *In re Wingspread.* The debtor-tenant's obligation to the guarantor (who had paid the rent) was based on the right of indemnification and was not an obligation under the lease. 116 B.R. at 932.

order requiring it to pay the rent and other charges under the lease which came due and owing during the sixty-day period following the petition date, save and except those few situations in which the landlord sought a lesser period of time of rent"); *In re Coastal Dry Dock, supra* (debtor was using only ten percent of the leased space); *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 30, ftn. 7 (2d Cir.1996) ("In either event, of course, the landlord is entitled to recover as an administrative expense the rent due while the debtor and the bankruptcy court debate whether to assume the lease. 11 U.S.C. 365(d)(3)"). *See also In re Child World, Inc.*, 161 B.R. 571, 576 (S.D.N.Y.1993); *In re Pacific–Atlantic Trading Co.*, 27 F.3d 401, 405 (9th Cir.1994) ("We observe, however, that section 365(d)(3) expresses the intent of Congress to secure for lessors the full amount of rent due during the 60–day period while the trustee determines to accept or reject the lease, regardless of any benefit to the estate"); *Paul Harris Stores, Inc. v. Mabel L. Salter Realty Trust (In re Paul Harris Stores)*, 148 B.R. 307, 314 (S.D.Ind.1992) (lessor need not show postpetition rent is actual and necessary for preserving estate); *In re Telesphere Communications, Inc.*, 148 B.R. 525, 531 (Bankr. N.D.Ill.1992) ("Pursuant to the plain language of Section 365(d)(3), the trustee or debtor in possession has a duty, prior to assumption or rejection of a lease of nonresidential real property, to make timely payment of the full rent due, from any available funds"); *In re Tobago Bay Trading Co.*, 142 B.R. 528, 533 (Bankr.N.D.Ga.1991) (adopted majority view that "the plain meaning of the provision 'notwithstanding section 503(b)(1) of this title' obviates the requirement that administrative expense status be proven") (citations omitted). To the contrary, *see In re Orvco, Inc.*, 95 B.R. 724, 728 (9th Cir. BAP 1989)[3] ("the language of 365(d)(3) ... does not mean that the necessity for showing the reasonableness of the rent or any of the other factors considered under section 503(b)(1)(A) has been completely abrogated"); *In re Bilyk*, 101 B.R. 586, 587 (Bankr. E.D.Mo.1989) ("The unexpired lease was deemed to have been rejected before the lessors filed their request for payment. Therefore, this claimant is required to establish its administrative expense status under 11 U.S.C. § 503(b)(1)(A)"); *In re Daisy/Cadnetix, Inc.*, 126 B.R. 87, 90 (Bankr.N.D.Cal. 1990) ("The Court hereby adopts the holding of *Orvco* that the bankruptcy estate is liable only for the actual and necessary value of nonresidential leased premises prior to assumption or rejection of the lease, rather than for the full contractual amount of the rent as set by the lease."); *In re Tammey Jewels, Inc.*, 116 B.R. 292, 294 (Bankr. M.D.Fla.1990) ("The 1984 amendments have not changed the necessity for showing the reasonableness of the rent or any· of the other factors considered under § 503(b)(1)(A)").

I agree with the majority view on this issue. The statute, in mandatory language, requires performance of "all the obligations". Rent is the primary obligation. There is no statutory predicate for the "actual" and "necessary" test of section 503(b)(1)(A) because section 365(d)(3) requires payment "notwithstanding section 503(b)(1)". The debtors' plaint that the abandoned premises did not confer any benefit upon the estate rings hollow because the debtors themselves elected to retain possession of the abandoned premises in the speculative but unsubstantiated hope of reaping a profit by assigning their leaseholds, and in any event the statutory language excludes a benefit test.

■ On the issue of whether the landlords are entitled to immediate payment, there is also a split of authority. For cases supporting immediate payment of post-petition rent, *see In re Wingspread, supra* (but see footnote 2, above); *In re Brennick*, 178 B.R. 305, 308 (Bankr.D.Mass.1995) (bankruptcy court granted immediate payment to lessor to the extent of funds available reasoning that "[r]equirement of immediate payment of rent does not put [lessor] in a unique position among all those with whom the Debtors had [postpetition] dealings" [*viz.*, normal operating expenses under section 363(c) ]); *Man-*

---

3. *In re Pacific–Atlantic Trading Co., supra* at 404–05, appears to overrule in part *In re Orvco* on the issue of whether a benefits test applies to section 365(d)(3) expenses. Shepard's does not clearly reflect this overruling.

*hattan King David Restaurant Inc. v. Levine*, 163 B.R. 36, 37 (S.D.N.Y.1993) (district court affirmed bankruptcy court's order directing the debtor to, among other things, "immediately pay to the receiver all post-petition rent and related charges"); *Paul Harris Stores, Inc. v. Mabel L. Salter Realty Trust (In re Paul Harris Stores), supra; In re Telesphere Communications, Inc.*, 148 B.R. 525, 531 (Bankr.N.D.Ill.1992) ("The absence of an express grant of superpriority cannot, then, be a basis for disregarding the plain language of Section 365(d)(3)"); *In re Worths Stores Corp.*, 135 B.R. 112, 116 (Bankr.E.D.Mo.1991) ("In a Chapter 11 case a request for payment of post-petition, pre-rejection rent pursuant to § 356(d)(3) need not be made prior to rejection and need not meet the requirements of § 503(b)(1)(A) in order to be given administrative expense priority"); *In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415, 416 (D.Mass.1987) (bankruptcy court granted immediate payment of postpetition, prerejection rent to lessor, concluding that "the command of § 365(d)(3) that the trustee shall 'timely' perform the rent obligation means that the trustee must pay the rent as it comes due"). To the contrary, *see e.g., In re Orvco, Inc.*, 95 B.R. 724, 728 (9th Cir. BAP 1989) ("Although section 365(d)(3) calls for "timely" performance of the debtor's lease obligations, there is no indication that Congress intended to grant landlords some type of super-priority status"); *In re Daisy/Cadnetix, Inc.*, 126 B.R. 87, 91 (Bankr.N.D.Cal.1990) ("The Court agrees with the *Orvco* court that a de facto 'superpriority' should not be created absent an explicit provision in the Bankruptcy Code") (footnote omitted); *In re Tammey Jewels, Inc.*, 116 B.R. 292, 295 (Bankr. M.D.Fla.1990) ("this Court rejects the cases which hold that § 365(d)(3) was designed to accord administrative priority to the unpaid rent accrued during the sixty-day period").

The debtors argue that requiring immediate payment of post-petition rent accords a preferred position to the landlords over other administrative claims and "[i]f one claimant is to be preferred over others, the purpose should be clear from the statute", citing and quoting *In re Drexel Burnham Lambert Group Inc.*, 134 B.R. 482, 488 (Bankr.

S.D.N.Y.1991) (citations quoted from omitted). Similarly, the *Orvco* line of cases rest on the assertion that "there is no indication that Congress intended to grant landlords some type of super-priority status". 95 B.R. at 728. To the contrary, the purpose of Congress to treat post-petition rent the same as section 363(c) operating expenses and to prefer landlords over administrative creditors is perfectly clear on the face of the statute. Section 365 undoubtedly does grant preferred treatment to parties to executory contracts, who may be *compelled* to continue performing post-petition whereas virtually every other category of administrative creditor who extends credit or provides goods or services post-petition does so voluntarily with knowledge of the degree of risk of administrative insolvency. A landlord in particular is subjected to compulsory continued performance post-petition by the automatic stay, and the provisions of sections 365(b)(1) and 365(d)(3) unambiguously grant priority status to this class of involuntary claimant whether the lease is assumed or rejected. The reasoning of Judge Wedoff in *In re Telesphere, supra*, 148 B.R. at 528–32, is most illuminating. Judge Wedoff explains that claims under section 365(d)(3) should not be labeled "administrative expenses." Instead, Judge Wedoff continues, "[g]iven this structure of the Code, the language of Section 365(d)(3) should be read as requiring that rental payments be made according to the procedure for operational payments under Section 363(c)(1)." *Id.* at 531.

Accordingly, this Court will follow *In re Telesphere* and the decisions which apply section 365(d)(3) as it is written. In addition, this Court will invoke section 105(a) of the Code to the extent necessary, if at all, for authority to provide a remedy to the landlords in order to carry out the provisions of Title 11. The landlords of the abandoned premises are entitled to immediate payment of all post-petition rent due and owing on the abandoned premises through the date(s) of relinquishment of the respective abandoned premises to the landlords.

■ A final issue is raised by the claim for counsel fees of landlord Winter, whose lease provides that counsel fees incurred to enforce

the lease are to be considered part of the rent. The cases on this issue too are divided. *Compare In re Pacific Arts Publishing, Inc.,* 198 B.R. 319, 321–24 (Bankr.C.D.Cal.1996) (denied attorneys' fees); *In re Gantos, Inc.,* 181 B.R. 903, 907–08 (Bankr.W.D.Mich.1995) (same) with *In re Pacific Sea Farms, Inc.,* 134 B.R. 11, 16 (Bankr.D.Haw.1991) (granted payment of reasonable attorneys' fees); *In re Revco D.S., Inc.,* 109 B.R. 264 (Bankr. N.D.Ohio 1989) (allowed attorneys' fees); *In re Narragansett Clothing Co.,* 119 B.R. 388, 391–92 (Bankr.D.R.I.1990), amended by 122 B.R. 855 (Bankr.D.R.I.1990). Given the fact that section 365(d)(3) mandates a departure from the normal priority of claims, it should be strictly construed. While the statutory obligation of "timely" performance is unambiguous with respect to rent, the obligation with respect to counsel fees is not. The language employed in section 365(d)(3) suggests a Congressional purpose to grant landlords a preferred position with respect to those obligations arising under the lease in a contractually determined time frame. Thus, the statute refers in the first sentence to "all the obligations ... arising *from* and after the order for relief ... *until* such lease is assumed or rejected". This articulation makes sense in the context of the rent obligation; it does not with respect to an obligation to pay attorneys' fees, which may fortuitously arise before or after the time period in question. Similarly, the statute says the trustee "shall *timely* perform", using an adverb which is contractually meaningful as to rent, but not as to attorneys' fees. The legislative history provides further support for this interpretation, stating that the "timely performance requirement" of section 365(d)(3) "will insure that the debtor-tenants will pay their rent, common area, and other charges on time" (citation in text at footnote 2, above). I conclude from this that the obligation to pay attorneys' fees is not one of the obligations within the scope of section 365(d)(3). Accordingly, any contractual obligation to pay counsel fees should be treated as part of the landlord's claim for damages.

The attorney for landlord Martin Winter and counsel for the debtors are directed to confer and submit to the Court an order applicable to all landlords of abandoned premises consistent with this decision. Counsel for the debtors are directed promptly to serve copies of this decision on each landlord (and counsel, if any) of abandoned premises, and the landlords shall then be entitled to submit claims for post-petition rent for immediate payment. Any objections to such claims shall be promptly presented to the Court for adjudication.