**In re MJ 500, INC., Debtor.**

**Bankruptcy No. 97–13685–CJK.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 17, 1998.

Brian P. Lenihan, Hill & Barlow, P.C., Boston, MA, for Five Hundred Boylston West Venture.

John O. Desmond, Framingham, MA, Chapter 7 Trustee.

## MEMORANDUM OF DECISION ON LANDLORD'S RENEWED MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE RENT

CAROL J. KENNER, Bankruptcy Judge.

The issue presented by this motion is whether § 365(d)(3) of the Bankruptcy Code requires that a landlord's claim for postpetition, prerejection rent be paid immediately, with priority over Chapter 7 administrative claims, where the estate is administratively insolvent and the funds with which the claim would be paid were generated after the rent accrued by the efforts of the Chapter 7 administrative creditors. Five Hundred Boylston West Venture, the Debtor's landlord, has moved for an order compelling the Chapter 7 Trustee to make immediate payment, with priority over all other administrative claims, of the postpetition rent that accrued under the Debtor's lease before its rejection, effective September 12, 1997. The accrued rent totals $29,315.74, including $21,986.84 attributable to the Chapter 11 phase of the case, and $7,328.88 to the Chapter 7 period. The Chapter 7 Trustee does not dispute the amount or the administrative status of the landlord's claim; he objects only to the landlord's request for priority over administrative claims.

The facts are not in dispute. The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on April 18, 1997, paid the postpetition rent owing through June, 1997, and on June 18, 1997, entered into a stipulation with the landlord to extend the deadline for assuming or rejecting the lease until August 18, 1997. However, on August 5, when the Debtor had failed to pay the rent then due for July and August, the landlord moved for an order compelling the Debtor to (1) assume or reject the lease and (2) pay immediately the administrative (i.e., postpetition) rent. On August 21, before a hearing was held on the motion, the Debtor moved to convert the case to one under Chapter 7 of the Bankruptcy Code, and the Court allowed the conversion motion on August 25. On September 5, the Chapter 7 Trustee, John Desmond, moved to reject the lease, and the Court allowed that motion on September 12, 1997. During this time, the Trustee also moved to continue the landlord's motion for immediate payment of administrative rent until such time as there was money in the estate to pay the claim; upon conversion, the estate had only $855.01. The Court allowed this motion and continued the landlord's motion generally.

Now, having liquidated the Debtor's assets, the Trustee is holding approximately $31,000, including $25,500 (gross) generated at a public auction and $4,700 in receivables collected by the Trustee. However, according to the Trustee, the estate has several administrative expenses in addition to the landlord's claim for pre-rejection rent:

| | | |
|---|---|---|
| 1. | Trustee's Commission | $3,840 |
| 2. | Auctioneer's Commission | 2,030 |
| 3. | Auctioneer's Expenses | 1,497 |
| 4. | U.S. Trustee's Quarterly Fees | 2,000 |
| 5. | Landlord's postrejection use and occupancy (approx.) | 5,850 |
| | TOTAL | $15,217 |

The Trustee also attests to the existence of other administrative obligations whose amounts are presently uncertain: the Trustee's attorney's fees, accountant's fees, capital gains and administrative taxes, and utility charges, all of which derive from the Chapter 7 period. Other administrative claims may yet surface, as the bar dates for Chapter 11 administrative expenses and for government claims had not expired when the Trustee filed his response. However, it is clear that the estate is administratively insolvent: it will not have sufficient funds to pay claims through the priority of Chapter 11 administrative expenses.

Relying on *In re McCabe*, 212 B.R. 21 (Bankr.D.Mass.1996) and the cases and arguments cited therein, the landlord argues that a claim for prerejection administrative rent is entitled to immediate payment, even where the estate is administratively insolvent and such payment, in effect, gives the rent claim priority over all other administrative expenses. The Trustee responds with essentially four arguments: that *McCabe* was wrongly decided; that it can be distinguished and should not govern where (and to the extent that) the funds from which payment is sought were generated or liquidated after the Debtor's default on the rent payment; that the funds are subject to security interests, a federal tax lien, and possibly a claim of trust arising from nonpayment of federal "trust fund taxes," all of which, if valid and not avoided, simply remove the funds from the estate; and that the Trustee has obligations—to file tax returns and W–2 forms and to challenge or avoid the liens—none of

which he can undertake if the landlord's claim has priority over the Chapter 7 administrative expenses they would generate.

In *McCabe*, I held that where the debtor-in-possession, in violation of 11 U.S.C. § 365(d)(3), had not paid its prerejection rent "timely," §§ 365(d)(3) and 105(a) required immediate payment by the Chapter 7 Trustee, even where the estate was administratively insolvent. The effect of this holding was to give the rent priority over other administrative claims and thus to violate the Bankruptcy Code's express priority scheme. Among administrative claims, this scheme gives priority to Chapter 7 claims over Chapter 11 claims, and, within each group, requires *pro rata* distribution. 11 U.S.C. § 726(a)(1) and (b). For this reason, I acknowledged in *McCabe* that its holding was not completely satisfactory, only better than its alternative. On the basis of *stare decisis*, and for the reasons set forth in *McCabe* itself, I reject the Trustee's argument for abandoning its holding.

However, as the Trustee argues, this case presents circumstances that *McCabe* did not and to which *McCabe*'s holding should not extend. First, to the extent that the funds at issue are subject to valid liens or constitute funds held in trust for the United States, they do not belong to the estate, 11 U.S.C. § 541(a)(1) and (d), and therefore are not available for distribution in satisfaction of claims against the estate, whatever their priority. The Trustee cannot distribute the funds until the validity of these interests is adjudicated or otherwise resolved. This alone is cause to deny immediate payment.

Second, as the Trustee points out, with the exception of the $855 .01 on hand upon conversion to Chapter 7, the funds from which the landlord seeks payment were liquidated or generated in the Chapter 7 period in an effort, by the Trustee and others, that generated administrative fees and expenses that the landlord now seeks to prime. This fact distinguishes this case from *McCabe* and the cases on which it was based, *In re Telesphere Communications, Inc.*, 148 B.R. 525 (Bankr. N.D.Ill.1992) and *In re Brennick*, 178 B.R. 305 (Bankr.D.Mass.1995) (Queenan, J.).

The Trustee contends that it would be an injustice to the Chapter 7 administrative claimants, and a chilling disincentive in Chapter 7 policy, to give the landlord priority over the claims of Chapter 7 administrative creditors, especially with respect to the funds they liquidate or generate for the estate. Their claims arise from the provision of services that created the fund from which the landlord seeks payment. Thus, if the landlord's claim were given priority, it would be paid in full, but (for example) the auctioneer, who advanced $1,497.00 to advertise for the auction that generated $25,500 in gross proceeds, would receive only an estimated thirteen percent dividend on his claim for reimbursement. The Court agrees with the Trustee that this result is inequitable and creates a disincentive that is contrary to the purpose and policy informing Chapter 7.

The inequity is clear. The landlord here is not asking the Trustee simply to turnover funds that the Debtor had and should have paid to the landlord when the rent was due. Rather, the landlord seeks funds that the Trustee liquidated *after* default on the rent payments, and would take those funds without paying the professionals who liquidated them and the attendant costs of liquidation.

The proposed superpriority also undermines the incentive built into the priority that § 726 gives to Chapter 7 administrative claims. 11 U.S.C. § 726(a)(1) and (b). A Chapter 7 trustee will not liquidate assets in a case without a reasonable expectation of being able to pay the professionals' fees and the other expenses and claims that he or she generates in that effort. Nor will auctioneers and professionals offer their services without reasonable assurance of payment. Without doubt, this concern for incentive is why the Bankruptcy Code gives first priority to Chapter 7 administrative claimants. 11 U.S.C. § 726(a)(1) and (b). This case illustrates the point. Before the funds at issue can be distributed to those holding claims against the estate, the Trustee must address the encumbrances against those claims. He will have no incentive to do so, and will be unable to enlist counsel in that effort, without reasonable assurance of payment; and he will have no assurance of payment if prerejection rent takes priority over Chapter 7 administrative expenses.

The *McCabe* remedy, following *Telesphere*, was based on § 105(a), which authorizes the court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *Telesphere*, 148 B.R. at 531–532. Where, as in this case, the landlord seeks payment from funds that became available only after the debtor's default on the rent, an order of immediate payment would not carry out but *frustrate* the provisions of the Bankruptcy Code, especially by undermining the Chapter 7 mechanism for liquidating assets to pay claims. *McCabe* did not hold that the Code gives "superpriority" treatment to every prerejection rent claim. Rather, it held that, in the circumstances of that case, immediate payment was the remedy that best carried out the provisions of the Code. That remedy is most appropriate when a debtor-in-possession, despite adequate funds, fails to pay the rent when due and, before the coffers are depleted, the landlord moves quickly for immediate payment; in this scenario, immediate payment merely enforces § 365(d)(3) with funds that administrative creditors should have expected would be applied to prerejection rent. In the present case, the facts differ substantially—funds on hand have been depleted and new funds raised at significant administrative expense—and thus implicate different provisions of the Code, especially concerning Chapter 7 administration and priority. The same remedy would ostensibly enforce § 365(d)(3)'s requirement of timely performance but would also subvert the liquidation processes of Chapter 7, unfairly deprive Chapter 7 administrative claimants (including the landlord itself) of payment on their claims, and, by preventing the Trustee from addressing the claimed encumbrances that prevent him from making any distribution of the funds, even fail in its purpose of paying the rent owed under § 365(d)(3). I therefore hold that, as to the funds collected in the Chapter 7 period, the landlord is not entitled to priority over administrative claims or to an order of immediate payment. For these reasons, a separate

order will enter denying the motion for immediate payment of prerejection rent.