In re **MICROVIDEO LEARNING SYSTEMS, INC., Debtor.**

**Bankruptcy No. 98–B–44899 JHG.**

United States Bankruptcy Court, S.D. New York.

April 28, 1999.

Todtman, Nachamie, Spizz & Johns, P.C., New York City, by Scott S. Markowitz, for debtor.

Mayer, Brown & Platt, New York City, by Michael P. Richman, and David M. Hillman, for Calet, Hirsch & Ferrell, Inc.

### DECISION ON MOTION BY SUB-LANDLORD FOR IMMEDIATE PAYMENT OF POST PETITION, PRE REJECTION NONRESIDENTIAL REAL PROPERTY RENT PAYMENTS

JEFFRY H. GALLET, Bankruptcy Judge.

### INTRODUCTION

Calet, Hirsch & Ferrell, Inc. ("CH & F") moves for an order, pursuant to § 365(d)(3) of the United States Bankruptcy Code (the "Code") for immediate payment of outstanding post petition, pre rejection rents.[1] Microvideo Learning Systems, Inc. (the "Debtor") opposes CH & F's motion on the grounds that it is administratively insolvent. For the reasons set forth below, CH & F's motion is DENIED.

### BACKGROUND

The facts are not in dispute. CH & F, the movant, is the lessee/sub-landlord of the 10th floor of 250 Park Avenue South, New York. The Debtor leased this space from CH & F and used it as its principal place of business.

On July 9, 1998, the Debtor filed a voluntary petition under chapter 11 of the Code. On August 18, 1998, the Debtor moved to extend its time to assume or reject the lease to June 29, 1999, the termination date of both the Debtor's sublease with CH & F and CH & F's lease with the building owner. CH & F objected to that motion on the grounds that the Debtor owed it pre and post petition rent. On September 29, 1998, I granted the Debtor's motion to the extent that its time to assume or reject was extended to January 8, 1999. As a condition to the Order, the Debtor was required to pay CH & F all rents owed from filing of the petition through October 31, 1998 by October 1, 1998. I also included a mechanism for CH & F to lift the automatic stay on shortened notice in the event of a rent default.

On January 7, 1999, the Debtor moved to further extend its time to assume or reject the sublease through June 29, 1999. CH & F again opposed the Debtor's motion. I denied the motion and the lease was deemed rejected as of February 8, 1999. See 11 U.S.C. § 365(d)(4) (1998). As part of that decision, I lifted the automatic stay to allow CH & F to exercise its state law rights and remedies flowing to it from the Debtor's rejection of its lease.

The Debtor did not pay rent from January 1, 1999 to the lease rejection date, February 8, 1999. CH & F argues that it is entitled to immediate payment of $19,827.96 for that period. The Debtor makes several arguments in opposition to CH & F's motion, only one of which requires discussion. The Debtor argues that if its assets were liquidated today, the proceeds would not be sufficient to pay the estate's administrative expense claims in full.[2]

---

1. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A).

2. The Debtor's status as a going concern and its viability are in serious question. The Debtor is in the process of liquidating its assets and it believes that a liquidation will not

Thus, the Debtor argues that it would be inequitable to pay CH & F 100% of its administrative expense claim, while other administrative expense creditors, including professionals, would receive less than full payment of their claims.

## DISCUSSION

In support of CH & F's contention that it is entitled to immediate payment of its post petition, pre rejection claim, CH & F relies on § 365(d)(3) of the Code. That section provides, in relevant part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title . . . .

11 U.S.C. § 365(d)(3) (1998).

◼ Congress added this section to the Code in 1984 as part of a series of amendments intended to improve the position of lessors of nonresidential real property. *See* William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 42:8 (1998). In particular, § 365(d)(3) was intended to protect real property lessors during the period between the petition date and the date when debtor/lessees choose to assume or reject a lease. *See Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods)*, 229 B.R. 388, 392 (6th Cir. BAP 1999); *In re Florida Lifestyle Apparel, Inc.*, 221 B.R. 897, 900 (Bankr.M.D.Fla.1997). Lessors are provided with this extra protection because they are one of the few creditors who, unlike trade creditors or utilities, are required to continue to do business with debtors post petition. *See In re Pudgie's Dev. of N.Y., Inc.*, 202 B.R. 832, 836 (Bankr.S.D.N.Y.1996).

◼ Section 365(d)(3) gives landlords two additional protections over other creditors entitled to administrative expense status. First, § 365(d)(3) allows landlords to make a claim for post petition rent without meeting the requirements of § 503(b)(1).[3] *See* § 365(d)(3). Thus, unlike other administrative expense claims, these claims are allowed in the full amount of rent and other charges due under the lease without a showing by the landlord that the amounts owed are reasonable or of a benefit to the estate. *See In re Wingspread Corp.*, 116 B.R. 915, 925–26 (Bankr. S.D.N.Y.1990) ("I read 'notwithstanding section 503(b)(1)' as meaning that irrespective of whether the payments required under the lease meet the usual requirements for administrative status, reasonableness and benefit to the estate, they are unconditionally due . . . ."). *See also Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401, 404 (9th Cir.1994); *TRST New York Inc. v. B.B. Ballew Sales. Co. (In re B.B. Ballew Sales Co.)*, 1996 WL 551663, *2 (S.D.N.Y.1996); *Augusta Mall Partnership v. Twigland Fashions, Inc. (In re Twigland Fashions, Inc.)*, 198 B.R. 199, 200 (W.D.Tex.1996); *WB, Ltd. v. Tobago Bay Trading Co. (In re Tobago Bay Trading Co.)*, 142 B.R. 528, 533 (Bankr.N.D.Ga.1991). *But see Great Western Savings Bank v. Orvco, Inc. (In re Orvco)*, 95 B.R. 724, 726 (9th Cir. BAP 1989) (holding that such claims are subject to court review to assess their reasonableness); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 943 (Bankr.W.D.Tex.1994) (same).[4]

---

provide sufficient funds to satisfy the secured creditor's lien on its property.

**3.** Section 503(b) of the Code provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . . .

11 U.S.C. § 503(b) (1998).

**4.** To the extent that this issue is still in question, I need not decide it here. The Debtor has not alleged that the lease involved here

The second protection that § 365(d)(3) provides to post petition commercial lessors is that the trustee, or the debtor in possession, is required to "timely perform all the obligations ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected...." 11 U.S.C. § 365(d)(3) (1998). This language has caused a great deal of debate among the Bankruptcy Courts. On its face, the section appears clear that trustees or debtors in possession are obligated, during the period between the petition and the lease rejection, to timely pay rent.

■■■ The confusion has arisen, though, where, as here, the debtor does not timely pay all of its post petition, pre rejection rent obligations and is administratively insolvent. The problem stems from the fact that the Code provides a mandate, timely rent payment, but does not specify a remedy in the event of a default. *See In re Rich's Dep't Stores, Inc.*, 209 B.R. 810, 815 (Bankr.D.Mass.1997); *In re Virginia Packaging Supply Co.*, 122 B.R. 491, 494 (Bankr.E.D.Va.1990); *In re Granada, Inc.*, 88 B.R. 369, 374 (Bankr.D.Utah 1988); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 (Bankr.E.D.Pa. 1987). The easy answer is that the landlord should be able to move to compel payment and, absent cause shown by the debtor, the court should direct the debtor to immediately pay the claim. *See In re Pudgie's Dev. of N.Y., Inc.*, 202 B.R. at 835–36 (recommending just such a resolution in the event of a default); *In re Buyer's Club Mkts., Inc.*, 115 B.R. 700, 702 (Bankr.D.Colo.1990) (noting landlord's right to immediate payment of its 365(d)(3) claim); *In re Granada, Inc.*, 88 B.R. at 375 (ordering payment of landlord's post petition, pre rejection claim where the trustee had failed to show that there was a "substantial doubt" that the estate would be

administratively solvent); 3 *Collier on Bankruptcy* ¶ 365.04[3][f][ii] (15th ed.1998). Here, though, the debtor is administratively insolvent. The question thus becomes did Congress, by enacting the "timely perform" language of § 365(d)(3), intend to give post petition, pre rejection lessors a super-priority administrative expense claim to be paid before the other administrative claimants, regardless of their priority?

The Second Circuit has not addressed this issue and there is a split in the authority among the courts that have looked at this problem. The vast majority of courts have held that § 365(d)(3) does not create, *sub silento*, an additional class of super-priority administrative claims. *See, e.g., In re Orvco*, 95 B.R. at 728; *Ansel Properties, Inc. v. Nutri/System of Fla. Assocs. (In re Nutri/System of Fla. Assocs.)*, 178 B.R. 645, 655 (E.D.Pa.1995); *In re J.T. Rapps, Inc.*, 225 B.R. 257, 264 (Bankr. D.Mass.1998); *In re Bryant Universal Roofing, Inc.*, 218 B.R. 948, 953 (Bankr. D.Ariz.1998); *In re Florida Lifestyle Apparel, Inc.*, 221 B.R. at 900; *In re Tel-Central Communications, Inc.*, 212 B.R. 342, 349 (Bankr.W.D.Mo.1997); *In re Amber's Stores, Inc.*, 193 B.R. 819, 825 (Bankr.N.D.Tex.1996); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 979–80 (Bankr.W.D.Wash.1994); *In re Almac's, Inc.*, 167 B.R. 4, 7–9 (Bankr.D.R.I.1994); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 945–46 (Bankr.W.D.Tex.1994); *In re Dawson*, 162 B.R. 329, 332–33 (Bankr.D.Kan.1993); *In re The Appliance Store, Inc.*, 148 B.R. 234, 243 (Bankr.W.D.Pa.1992); *In re Joseph C. Spiess Co.*, 145 B.R. 597, 608 (Bankr.N.D.Ill.1992); *In re CSVA, Inc.*, 140 B.R. 116, 121 (Bankr.W.D.N.C.1992); *Maroon v. Four Star Pizza, Inc. (In re Four Star Pizza, Inc.)*, 135 B.R. 498, 500 (Bankr.W.D.Pa.1992); *In re Laurence R.*

did not provide a benefit to the estate. In addition, I found in my prior order extending the Debtor's time to assume or reject the lease and in my decision delivered from the bench denying the Debtor's second motion to extend

the time to assume or reject that this lease did provide a benefit to the estate during the period from the petition day to the day the lease was deemed rejected.

*Smith, Inc.*, 127 B.R. 715, 717 (Bankr. D.Conn.1991); *In re Washington Bancorporation*, 126 B.R. 130, 131 (Bankr.D.D.C. 1991); *In re Daisy/Cadnetix Inc.*, 126 B.R. 87, 91 (Bankr.N.D.Cal.1991); *In re Virginia Packaging Supply Co.*, 122 B.R. 491, 494–95 (Bankr.E.D.Va.1990); *In re Wingspread*, 116 B.R. 915, 932 (Bankr. S.D.N.Y.1990); *Meritbanc Sav. Ass'n v. Regency Chevrolet, Inc. (In re Regency Chevrolet, Inc.)*, 122 B.R. 60, 62 (Bankr. S.D.Tex.1990); *In re Buyer's Club Mkts., Inc.*, 115 B.R. 700, 702 (Bankr.D.Colo. 1990); *In re Orient River Invs., Inc.*, 112 B.R. 126, 128, 134 (Bankr.E.D.Pa.1990); *In re Cardinal Indus., Inc.*, 109 B.R. 738, 742 (Bankr.S.D.Ohio 1989); *In re Granada*, 88 B.R. 369, 373–74 (Bankr.D.Utah 1988); *In re United West, Inc.*, 87 B.R. 138, 141 (Bankr.D.Nev.1988); *In re Homeowner's Outlet Mall Exch., Inc.*, 89 B.R. 965, 970 (Bankr.S.D.Fla.1988); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. at 973 (Bankr.E.D.Pa.1987); *In re Tandem Group, Inc.*, 61 B.R. 738, 741–42 (Bankr.C.D.Cal.1986); *see also* 3 *Collier on Bankruptcy* ¶ 365.04[3][f][ii] (15th ed.1998) ("[t]he better approach is to reject any superpriority for the lessor's claim."). *But see Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.)*, 150 B.R. 965, 971 n. 10 (D.Kan.1993); *In re Rare Coin Galleries of Am., Inc.*, 72 B.R. 415, 416 (D.Mass.1987); *In re New Almacs, Inc.*, 196 B.R. 244, 250 (Bankr. N.D.N.Y.1996); *In re Leisure Time Sports, Inc.*, 189 B.R. 511, 513 (Bankr. S.D.Cal.1995); *In re Brennick*, 178 B.R. 305, 308 (Bankr.D.Mass.1995); *In re Telesphere Communications, Inc.*, 148 B.R. 525, 531–32 (Bankr.N.D.Ill.1992); *In re Gillis*, 92 B.R. 461, 470 (Bankr.D.Hawai'i

1988). I agree with the majority and generally adopt its reasoning.

The majority and the minority each contend that they are embracing the "plain meaning" of the statute. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Given the disagreement over the "plain meaning" of the statute, it is obviously not as plain as some contend. *See In re Brennick*, 178 B.R. at 307.

The problems that courts have faced in deciphering Congress's intent in drafting this section have revolved around the phrase "shall timely perform." Taken alone, as the minority does, it appears to be an unequivocal mandate of immediate performance. It is its view that to apply a condition to the payment or to read the language in conjunction with other sections of the code is to engage in judicial legislating. *See In re Telesphere Communications, Inc.*, 148 B.R. at 528.

The minority analogizes the payment of post petition rent under § 365(d)(3) to ordinary course payments under §§ 363(c)(1) and 1108. *See id.* at 529–32; *In re Pudgie's Dev. of N.Y., Inc.*, 202 B.R. at 836. This reasoning relies on applying the practical outcome of the "notwithstanding section 503(b)(1)" language to the timely perform clause. The minority begins by reading the language, as most courts do, as meaning that the debtor is required to pay the full amount of the rent due without a court hearing or the landlord making a showing that the use and occupancy has conferred a benefit to the estate. *See In re Wingspread*, 116 B.R. at 925–26. By applying this interpretation to the timely payment mandate, it concludes that rent payments have all of the characteristics of ordinary course payments under §§ 363(c)(1)[5] and 1108[6] and are, there-

---

**5.** Section 363(c)(1) provides:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordi-

nary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1) (1998).

**6.** Section 1108 provides:

fore, entitled to similar treatment. Based on this analogy, these courts note that ordinary course payments are generally not subject to later disgorgement in the event that the estate turns out to be administratively insolvent. *See Guinee v. Toombs (In re Kearing),* 170 B.R. 1, 7 (Bankr.D.D.C.1994). Thus, for the same reasons, they conclude that Congress must have intended to confer upon landlords a de facto super-priority administrative payment under § 365(d)(3).

I do not agree with this reasoning. I believe that this reading of the statute reaches conclusions that are not embodied in the Code and overlooks a fundamental principle in statutory construction.[7] First, the minority courts conclude that Congress intended to bestow super-priority status on landlords' post petition, pre rejection claims although the Code is devoid of any such language. Yet, in the three other sections of the Code that confer such treatment, the statute is explicit. *See* §§ 507(b) (stating that in certain situations where adequate protection provided to a secured creditor is inadequate "then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection"); 364(c)(1) (providing that the court, after notice and a hearing, may give claims of post petition lenders "priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title"); 726(b) (granting chapter 7 administrative expense claims "in a case that has been converted to [chapter 7] ... priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such

conversion and over any expenses of a custodian superseded under section 543 of this title."). *See also In re Granada,* 88 B.R. 369, 373 (Bankr.D.Utah 1988) (noting the recognized bankruptcy principle that " 'priorities are fixed by Congress, and courts are not free to fashion their own rules of super-priorities or sub-priorities within any given priority class. That course belongs to Congress.' " (*quoting* 3 *Collier on Bankruptcy* ¶ 507.02[3] )); *In re Daisy/Cadnetix Inc.,* 126 B.R. 87, 91 n. 2 (Bankr.N.D.Cal.1991); *In re United West, Inc.,* 87 B.R. 138, 141 (Bankr.D.Nev.1988). As one court aptly put it, "[c]ongress knew how to grant super-priority status" when that was the outcome it wanted. *In re Florida Lifestyle Apparel, Inc.,* 221 B.R. 897, 900 (Bankr.N.D.Fla.1997) (*citing In re Joseph C. Spiess Co.,* 145 B.R. 597, 608 (Bankr.N.D.Ill.1992)).

Second, as a matter of fundamental statutory interpretation, no super-priority status can be read into § 365(d)(3). "When Congress amends the bankruptcy laws, it does not write 'on a clean slate.' " *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (*citing Emil v. Hanley,* 318 U.S. 515, 521, 63 S.Ct. 687, 87 L.Ed. 954 (1943)). In order to understand, therefore, what Congress intended by enacting § 365(d)(3) it is necessary to examine what the practice was prior to the enactment. *Id.*

Before 1984, it was common practice, in many jurisdictions, for debtors not to pay any post petition rent until they had decided whether to assume or reject the lease. *See In re J.T. Rapps, Inc.,* 225 B.R. 257, 259–60; *In re Homeowner's Outlet Mall Exch., Inc.,* 89 B.R. at 968. This effective-

---

Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business.

11 U.S.C. § 1108(1998).

**7.** Even if I were to adopt the § 363(c)(1) analogy, I am not sure that the outcome would be different. It is unclear from reading the Code how a post petition administrative creditor would be treated in the event

that a debtor did not pay that creditor in the ordinary course and then the creditor moved to compel payment at a time when it was clear that the debtor was administratively insolvent. *See In re Unitcast, Inc.,* 214 B.R. 1010, 1017–19 (Bankr.N.D.Ohio), *aff'd,* 219 B.R. 741 (6th Cir. BAP 1998) (finding that such claims should be treated as an administrative expense claim pursuant to § 503 and are not entitled to super-priority treatment).

ly made the landlord the debtor's unwilling underwriter. This hardship was compounded by the fact that if the lease was rejected, the debtor would be liable to the landlord only for that portion of the leasehold which satisfied the benefit to the estate standard required by § 503(b). *See In re Laurence R. Smith, Inc.,* 127 B.R. at 716; *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. at 971–72.

It is with that practice in mind that § 365(d)(3) must be read. When that is done, it becomes apparent that the clause "notwithstanding section 503(b)(1)" was inserted into the statute not for the purpose of elevating post petition rent payments to a position greater than other administrative expenses, but, instead, only for the purpose of excusing this class of administrative expenses from having to wait for an administrative distribution before being paid.

Third, the implied super-priority theory fails to account for the fact that the other super-priority administrative expense categories are not on a par with each other. Thus, if a court decides that § 365(d)(3) provides super-priority treatment for post petition, pre rejection rent claims, then it is faced with the perplexing task of deciding whether this super-priority treatment is superior to, or inferior to, the explicit super-priority classes. Since this is an implied super-priority, there is no legislative history to guide a court in resolving this problem.

One court, which was initially in the implied super-priority camp, had just such a problem. In *In re McCabe,* 212 B.R. 21 (Bankr.D.Mass.1996), the court was faced with a situation similar to this one. After examining the opinions of the various courts that have weighed in on this issue, she concluded "that § 365(d)(3) requires immediate payment, even where the estate is administratively insolvent." *Id.* at 22.

Two years later, in *In re MJ 500, Inc.,* 217 B.R. 93 (Bankr.D.Mass.1998), the same court was again faced with a demand by a lessor for post petition, pre rejection rent payments from an administratively insolvent debtor. In *MJ 500,* the debtor had originally filed a chapter 11 petition. The debtor paid its rent for several months, and then stopped. *Id.* at 93. Shortly after the debtor stopped paying its rent, the landlord moved to compel the debtor to (1) assume or reject the lease and (2) immediately pay the post petition rent. *Id.* Before the landlord's motion could be heard, however, the debtor moved to convert the case from chapter 11 to chapter 7. *Id.* The motion was granted, a trustee was appointed and, shortly thereafter, the lease was rejected. *Id.* At the same time, the trustee moved to continue the landlord's motion until such a time as the estate could pay the landlord's claim. *Id.* That motion was also granted. *Id.* In the months that followed, the trustee was able to build the estate from $855.01 on the conversion date to approximately $31,000. *Id.* at 93–94. This was not enough money to pay the landlord's claim and the chapter 7 administrative expense claims, including the trustee's commission. *Id.* at 94.

The court was faced with the problem of either following its decision in *McCabe* and paying the landlord, effectively denying the chapter 7 trustee any compensation for his efforts in building an estate, or to find that the holding in *McCabe* is less than universal. This problem was magnified by the express grant of super-priority treatment given to chapter 7 administrative expenses over chapter 11 administrative expenses when a case has converted from chapter 11 to chapter 7. *See* § 726(b). Unable to harmonize *McCabe* with *MJ 500* and the mandates of the Code, the court conceded that the effect of the *McCabe* "holding was to give the rent priority over other administrative claims and thus to violate the Bankruptcy Code's express priority scheme." *Id.*[8]

8. Judge Kenner did not completely abandon her holding in *McCabe.* Instead, she conclud-

These two cases highlight a critical problem with granting super-priority treatment under § 365(d)(3), the inability to determine the relative priority of the implied super-priority claim *vis a vis* the enumerated super-priority classes.

Finally, I address the most recent case in the Southern District on this issue, *In re Pudgie's Dev. of N.Y., Inc.* Actually, there are two published *Pudgie's* opinions on point, 202 B.R. 832 (Bankr.S.D.N.Y.1996) ("*Pudgie's I*") and 223 B.R. 421 (Bankr. S.D.N.Y.1998) ("*Pudgie's II*"). In *Pudgie's I*, Judge Hardin was faced with a series of related debtors who held leaseholds. *Pudgie's I* at 833. Many of these properties had been effectively abandoned by the debtors, which had not paid rent post petition. *Id.* These lessees/debtors moved to extend their time to assume or reject the leases in order to allow them more time to determine whether the leases were a valuable asset of the estate. *Id.*

Judge Hardin concluded, after noting the split of authority on the immediate payment issue, that the landlords were entitled to immediate payment of their post petition rents. *Id.* at 836. In doing so, he adopted the reasoning of Judge Wedoff in *In re Telesphere,* 148 B.R. 525, 528–32 (Bankr.N.D.Ill.1992), who concluded that rent payments should be treated like ordinary course payments under § 363(c)(1). *Pudgie's I* at 836. Judge Hardin, therefore, directed the debtors to immediately pay the outstanding post petition rent arrears. *Id.*

Importantly, though, the issue of administrative insolvency was not raised in *Pudgie's I.* That was the topic of *Pudgie's II.* By 1998 it became clear that the debtor would not be able to reorganize and it was sold. *Pudgie's II,* at 422. It was also clear that the estate was administratively insolvent. *Id.* Despite the administrative insolvency of the debtors, several landlords sought super-priority treatment of their post petition, pre rejection rent claims pur-

suant to § 365(d)(3). *Id.* at 425. Faced with a situation in which the payment of the landlords' claims would undoubtedly mean the denial of payment to other worthy post petition creditors who had provided valuable services, Judge Hardin drew the following conclusion with which I agree:

> The landlords argue that the "timely performance" requirement of Section 365(d)(3) gives them a superpriority administrative claim for rent which is not timely paid. The argument stretches the statute beyond its limits. Although this Court adheres to the view that Section 365(d)(3) grants a landlord a right to timely payment of post-petition rent obligations, if that right is not enforced by the landlord the statute does not give the landlord a superpriority claim for accrued but unpaid rent, to the prejudice of other administrative or priority claims. *See, e.g., In re Joseph Spiess Co.,* 145 B.R. 597, 608 (Bankr.N.D.Ill. 1992) ("This language [of timely performance] in no way, however, expressly elevates these post-petition obligations to super-priority status. Only section 364 contains any such language"); *In re Wingspread Corp.,* 116 B.R. at 932 ("section 365(d)(3) does not serve as the basis for a superpriority claim").

*Id.*

■ Here, I am faced with an administratively insolvent debtor. As a result, when an administrative expense is paid will determine whether it is going to paid at all. *See In re Joseph C. Spiess Co.,* 145 B.R. at 607; *In re Virginia Packaging Supply Co.,* 122 B.R. at 495. The payment of rent now would effectively give the landlord a super-priority over the other administrative expense creditors. That, I believe, is not the purpose of § 365(d)(3). *See In re MS Freight Distrib., Inc.,* 172 B.R. at 980 ("[t]he general rule is that all administrative expense creditors must be

ed that super-priority status should be accorded to post petition, pre rejection landlords on

a case-by-case basis. *In re MJ 500,* 217 B.R. at 95.

treated with absolute equality unless a creditor agrees to subordinate its claims or unless the Code specifically provides otherwise.").

## CONCLUSION

For the reasons set forth above, CH & F's motion for immediate payment of post petition, pre rejection lease payments is DENIED.

Settle Order.